S13A0366. ROMER v. THE STATE.
(745 SE2d 637)

NAHMIAS, Justice.

Jehrod Romer appeals his murder and firearm possession convictions resulting from the shooting death of 16-year-old Quantavia Hill. Appellant contends that the evidence was insufficient to support his convictions, that the trial court erred in allowing his brother Jamal's testimony to be impeached with evidence that Jamal refused

to give a statement to the police on the day after the shooting, and that his trial counsel provided ineffective assistance. We affirm.[1]

1. (a) The evidence presented at trial, viewed in the light most favorable to the verdict, showed the following. On February 13, 2006, Appellant attended the funeral of his girlfriend's aunt and a gathering afterwards of 20 to 30 people at the aunt's house, which lasted into the evening. Appellant and his brother Jamal were playing cards with Pierre Kennedy and Kennedy's brother, Diontay Hendricks, while Hill watched. Appellant accused Kennedy and Hendricks of cheating, stood up, pulled out a gun, and pointed it at Hendricks. Appellant then began pacing back and forth, ranting, and he ordered that no one leave the house. Appellant was yelling so loudly that a neighbor across the street could hear him warning that he was armed.

Kennedy and Hendricks fled out the back door, jumped off the balcony, and ran into the woods. When Appellant went to the balcony after them, Hill ran out the front door and up the street. Appellant ran back through the house and out the front door chasing Hill, yelling, "Motherf-----, you gonna run." From across the street, the neighbor saw a man dressed like Appellant chase a youth down the street while firing a gun; she saw and heard no one else shooting at that time. Kennedy also saw Appellant shooting. Hill was struck once in the back; he made it to the house of a family friend, but there he collapsed and died from internal bleeding.

After the shooting, Appellant returned to the aunt's house and then fled in a car with his brother and some other guests. Kennedy and Hendricks returned to the house after Appellant was gone. The police recovered five shell casings from the street at the point where the neighbor and Kennedy saw Appellant fire his gun. Appellant was arrested the next day, and he led the police to where he claimed he had discarded his gun, but it was not found there. At trial, the defense conceded that Appellant had fired his gun outside the house but argued that he did so in self-defense while engaged in a gunfight with

---

[1] The crimes occurred on February 13, 2006. On October 9, 2007, Appellant was indicted in Fulton County for malice murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a crime, and possession of a firearm by a felony first-offender probationer. On October 19, 2007, after a four-day trial, a jury convicted Appellant of all charges. On November 20, 2007, the trial court sentenced him to life in prison for malice murder plus a consecutive five-year term for possession of a firearm during the commission of a crime. The felony murder convictions were vacated by operation of law, and the remaining convictions merged. On November 26, 2007, Appellant filed a motion for new trial, which he amended on November 17, 2010. After a hearing on January 20, 2012, the trial court denied the motion on January 25, 2012. Appellant timely appealed, and the case was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

Kennedy and Hendricks. However, the police had canvassed the area searching for shell casings and bullet holes in the house's exterior, lawn furniture, and trees. No evidence supporting Appellant's story of a shootout was found.

(b) Appellant contends that conflicting testimony at trial and the lack of physical evidence linking him to the crimes, along with the State's alleged failure to prove that he had any motive to kill Hill, means that the evidence was insufficient to support his convictions. However, " '[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (citation omitted). And the evidence indicated that Appellant's motive for shooting at Hill as he ran away was anger at Hill's (and Kennedy's and Hendricks's) disobeying Appellant's order not to leave the house. In any event, while evidence of motive for the homicide is always *relevant* in a murder trial, see *Goodman v. State*, 293 Ga. 80, 83-84 (742 SE2d 719) (2013), the State is not *required* to prove the defendant's motive for killing the victim to sustain a murder conviction, since motive is not an essential element of the crime. See *Thompson v. State*, 286 Ga. 891, 892 (692 SE2d 384) (2010); *Darling v. State*, 248 Ga. 485, 487 (284 SE2d 260) (1981). When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. On the day after the shooting, a few hours after Appellant was arrested for Hill's murder, his brother Jamal was taken to a police station, but he refused to give a statement on the advice of an attorney. At trial, before the start of the second day of testimony and again before the defense case began, Appellant indicated that he planned to call Jamal as a witness and moved to preclude any questions regarding Jamal's refusal to make a statement to the police on the ground that such questions would violate Jamal's "Fifth Amendment right." The trial court denied the motion both times.

Nevertheless, Appellant called Jamal to testify, and on direct examination, Jamal claimed that Hill befriended Appellant during the card game; that while Appellant argued with Hendricks, Kennedy tried to pass a gun to Hendricks but Appellant saw this and indicated that he had his own gun; that he never saw Appellant pull out his gun inside the house; that after he saw Kennedy and Hendricks go out the back door, he heard shots from behind the house; that he then heard a second set of shots from the front of the house; and that he saw two shots fired from the street while Appellant

crouched beside cars in front of the house. On cross-examination, the prosecutor repeatedly questioned Jamal about his refusal to speak to the police after the shooting and suggested that if Jamal's exculpatory story were true, he would not have waited until trial (a year and a half later) to tell it. The prosecutor also argued that point to the jury in closing argument.

Appellant contends that the trial court erred in denying his motion to preclude any mention of his brother's refusal to speak to the police. Responding to the Fifth Amendment objection that Appellant raised at trial, the State argues that Appellant did not invoke his own rights and lacked standing to invoke either Jamal's right against self-incrimination or Jamal's due process right not to have his silence used to incriminate him after being advised of his *Miranda* rights, see *Doyle v. Ohio*, 426 U. S. 610, 611 (96 SCt 2240, 49 LE2d 91) (1976).[2] The State is correct. Generally speaking, and particularly outside the First Amendment context, a criminal defendant "will not be heard to complain of the violation of another person's constitutional rights." *Sims v. State*, 243 Ga. 83, 85 (252 SE2d 501) (1979). See also *Alderman v. United States*, 394 U. S. 165, 174 (89 SCt 961, 22 LE2d 176) (1969). And Georgia courts have specifically held that a criminal defendant has no right to raise alleged violations of another individual's right against self-incrimination or rights under *Miranda*. See *Wilson v. State*, 286 Ga. 141, 142 (686 SE2d 104) (2009) (holding that "a criminal defendant lacks standing to assert [another person's] privilege against self-incrimination" because "(t)he privilege against self-incrimination is that of the person under examination as a witness and is intended for his protection only" (citations and punctuation omitted)); *Garlington v. State*, 268 Ga. App. 264, 267 (601 SE2d 793) (2004) (holding that a defendant lacks standing to seek the exclusion of evidence on the ground that it was taken in violation of someone else's *Miranda* rights). Appellant has pointed to no constitutional authority to the contrary.

Instead, it appears from his brief on appeal that Appellant is now making a different argument based on the non-constitutional, evidentiary holding that this Court first announced in 1991 in Division 5 of *Mallory v. State*, 261 Ga. 625, 629-630 (409 SE2d 839) (1991),[3] and that was applied in cases Appellant cites, see *Reynolds v. State*, 285

---

[2] We note that the record does not indicate whether Jamal was ever advised of his *Miranda* rights, see *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SCt 1602, 16 LE2d 694) (1966), nor was a determination made by the trial court as to whether Jamal was ever in police custody so that he would need to be advised of his *Miranda* rights before being interrogated.

[3] Division 2 of *Mallory* was implicitly overruled in *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998). See *Clark v. State*, 271 Ga. 6, 10 (515 SE2d 155) (1999).

Ga. 70, 70-72 (673 SE2d 854) (2009), and *Grissom v. State*, 300 Ga. App. 593, 595 (685 SE2d 492) (2009). In *Mallory*, this Court recognized the holding of the United States Supreme Court that, " '[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings,' " it does not violate constitutional due process " 'for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.' " *Mallory*, 261 Ga. at 629-630 (quoting *Fletcher v. Weir*, 455 U. S. 603, 607 (102 SCt 1309, 71 LE2d 490) (1982)). But we also noted that Court's admonition that " '[e]ach jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial.' " Id. at 630 (quoting *Jenkins v. Anderson*, 447 U. S. 231, 240 (100 SCt 2124, 65 LE2d 86) (1980)). We then quoted former OCGA § 24-3-36, a provision of Georgia's old Evidence Code,[4] which said, "Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission," before announcing, as an evidentiary matter and with no further analysis:

> We take this opportunity to hold that in criminal cases, a comment upon a *defendant's* silence or failure to come forward is far more prejudicial than probative. Accordingly, from the date of publication of this opinion . . . such a comment will not be allowed even where the *defendant* has not received *Miranda* warnings and where he takes the stand in his own defense.

*Mallory*, 261 Ga. at 630 (emphasis added).

Appellant did not raise this evidentiary objection at trial, and so he has not preserved the claim for appellate review. See *Sanders v. State*, 290 Ga. 637, 641 (723 SE2d 436) (2012). In any event, in the more than two decades since *Mallory* was decided, we have not extended its holding to prohibit comments on the silence or failure to come forward of witnesses other than the criminal defendant who is on trial, and we see no reason to do so now.

3. Appellant asserts that he received constitutionally ineffective assistance at trial from his experienced criminal defense attorney,

---

[4] Appellant was tried in 2007, when the old Evidence Code applied. We note that the old § 24-3-36 was repealed by the legislation enacting the new Evidence Code, see Ga. L. 2011, p. 99, § 2, which applies to trials beginning after January 1, 2013, see id. § 101. We need not decide here whether *Mallory* remains good law under the new evidence rules. See *Yancey v. State*, 292 Ga. 812, 817, n. 9 (740 SE2d 628) (2013) ("*Mallory* was decided, of course, under the old rules of evidence, which also properly were applied in this case . . . . We offer no opinion about the continuing viability of *Mallory* under the new Evidence Code.").

Rodney Zell. To prevail on this claim, he is required to prove both that his counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, Appellant must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U. S. ___, ___ (131 SCt 770, 787, 178 LE2d 624) (2011) (quoting *Strickland*, 466 U. S. at 689). "Thus, a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Brown v. State*, 288 Ga. 902, 909 (708 SE2d 294) (2011) (citation omitted). If there is no showing of deficient performance, we need not address the prejudice issue. See *Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010) ("In examining an ineffectiveness claim, a court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" (quoting *Strickland*, 466 U. S. at 697)). Appellant has not proved deficient performance in this case.

(a) Appellant claims first that Zell was ineffective because he did not impeach the credibility of State witness Yolanda Owens, Pierre Kennedy's girlfriend, with her 2003 guilty pleas to six counts of theft by deception. Zell testified at the motion for new trial hearing that he had obtained the criminal histories of the State's witnesses and that he knew Owens's theft by deception convictions would have been admissible, but his decision about whether to use them for impeachment would have depended on the content of her testimony. Zell remembered impeaching Owens by showing inconsistencies between her trial testimony and her prior statement to the police. Zell also established her bias by showing that Owens had been dating Kennedy for almost three years, they lived together, he was the father of her two children and the child with whom she was pregnant, and he supported her and her children financially. Zell got Owens to admit that she tried to help the police. Finally, Zell got Owens to admit, after an initial denial, that she had told the police shortly after the shooting that Appellant had told her when he returned to the house that he had not shot anyone — a point the defense very much wanted the jury to believe.

"[T]he extent of cross-examination is a strategic and tactical decision . . . ." *Fairclough v. State*, 276 Ga. 602, 605 (581 SE2d 3) (2003). In light of the cross-examination Zell conducted, Appellant

has not shown that it was patently unreasonable to decide not to try to generally impeach Owens's credibility with her prior convictions. Appellant has therefore failed to establish deficient performance. See *Brown*, 288 Ga. at 909.

(b) Appellant also claims that Zell was ineffective in failing to cross-examine Kennedy and Diontay Hendricks about certain criminal charges. See *Williams v. State*, 292 Ga. 844, 846 (742 SE2d 445) (2013) ("[A] defendant must be permitted to cross-examine a witness for the State about a charge that was pending either at the time the witness gave a statement or at the time of trial."). A few weeks after Hill was killed, on March 7, 2006, Kennedy was charged with misdemeanor obstruction of law enforcement and misdemeanor possession of marijuana, but the charges were dismissed two days later due to "insufficient evidence to show . . . probable cause." On July 1, 2006, Hendricks was charged with felony theft by receiving a stolen handgun, but the case was placed on the "dead docket" on September 26, 2006, based on the joint request of the Fulton County District Attorney and the defense that the matter be referred to a pre-trial intervention program. On August 10, 2006, Kennedy was charged with misdemeanor possession of marijuana and misdemeanor "Carrying Concealed Weapon — Unlicensed Firearm in Vehicle." Those charges were nolle prossed at the request of an Assistant Fulton County Solicitor-General on March 27, 2008, five months after Appellant's October 2007 trial.

At the motion for new trial hearing, Zell acknowledged that Hendricks's dead-docketed charge was technically still pending at the time of Appellant's trial, but Zell did not believe that questions about that charge would have been allowed to show bias because it was effectively disposed of long before Appellant's trial. Zell was also concerned that even if such questions were allowed, this tactic could backfire, because the State could respond by showing that the dead-docketing disposed of the charge as a practical matter. And Zell did not think that questions about Kennedy's misdemeanor charges would be allowed to show bias, because those charges were handled by the solicitor-general's office, not by the district attorney's office that was prosecuting Appellant's case, which appears to be true at least of the only charges pending against Kennedy at the time of Appellant's trial. Whether or not Zell's views about how the trial court would have ruled on these issues were entirely correct, it cannot be said that no reasonable attorney would have decided against attempting to ask about the charges, given their limited probative value to show bias and the cross-examination of Kennedy and Hendricks that Zell did conduct. See *Brown*, 288 Ga. at 909. Thus, Appellant again

failed to show deficient performance, and the trial court correctly held that he failed to show ineffective assistance of trial counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 1, 2013.

*Eric J. Taylor*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.