FINAL COPY
295 Ga. 380

S14A0043. RIVERA v. THE STATE.

HUNSTEIN, Justice.

Appellant Orville Francisco Cotto Rivera a/k/a Anderson Jurkewicz was convicted of malice murder, felony murder, and aggravated assault in connection with the October 16, 2011 stabbing death of Neriton Souza Do Amaral. Rivera appeals the denial of his amended motion for new trial, asserting that the trial court erred in admitting evidence of two previous incidents and trial counsel was ineffective. Finding no error, we affirm.[1]

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. In the early morning hours of Sunday, October 16, 2011, Rivera was at Los Bravos Restaurant, which was operating

---

[1] On January 19, 2012, a Cobb County grand jury indicted Rivera for malice murder, felony murder, and two counts of aggravated assault. During August 6-10, 2012, Rivera was tried before a jury. On August 10, 2012, the jury returned a verdict of guilty on all counts except one count of aggravated assault. On the same day, the court sentenced Rivera to life imprisonment for malice murder, with the remaining counts merging or vacated as a matter of law. Rivera filed a motion for new trial on August 13, 2012, which was amended on January 3, 2013. The trial court held a hearing on Rivera's motion for new trial on February 14, 2013, and denied the motion in an order filed February 18, 2013. Rivera filed a notice of appeal on February 27, 2013. The appeal was docketed to the January 2014 term of this Court and orally argued on January 7, 2014.

as a Brazilian dance club. When Rivera asked a woman to dance, Amaral yanked her arm. Rivera moved the woman aside and threw a punch at Amaral; a fight ensued with both men punching each other. Both men were intoxicated.

A security officer escorted Amaral out the front door. A security officer planned to escort Rivera out the back door but learned that Amaral was trying to reenter the club through the back door. Therefore, a security officer took Rivera out through the front door.

Meanwhile, Amaral had made his way back to the front of the restaurant. Amaral approached Rivera, and the fight continued. Friends of Amaral and Rivera tried to break up the fight and keep the two men separated. At one point when the men were separated, the fight appeared to be over. Rivera went to his car and retrieved a knife. One of Amaral's friends yelled, "He's got a knife in his hand. He's going to kill him." Rivera ran up to Amaral, and Amaral punched him. Rivera stabbed Amaral three times very quickly. One of Amaral's friends pushed Rivera off of Amaral. As Rivera turned around and ran back to his car, one of Amaral's friends heard him say, "I stuck him." Amaral started to fall, and as his friends tried to lift him up, they noticed that he was wet and there was blood on his shirt. Rivera got in his car, backed up, opened the door,

yelled at one of Amaral's friends that he would "get [him] too," and then drove away.

Witnesses called the police, who later performed CPR on Amaral until an ambulance arrived. Amaral showed no signs of life at the scene and was pronounced dead later that morning. Based on witness statements, police searched Rivera's apartment and issued a BOLO for his car. The next day, police stopped Rivera in Delaware for speeding and arrested him. Rivera admitted to police that he stabbed Amaral and threw the knife out of his car window.

At trial, the Chief Medical Examiner for Cobb County testified that Amaral suffered three stab wounds in his chest, two of which were lethal. The examiner testified that Amaral died as a result of the stab wounds to his chest, and he could not determine which wound Amaral received first.

Also at trial, Rivera admitted to stabbing Amaral. Security camera footage from the restaurant did not capture the fight outside. However, footage showed Rivera going to his car and then running from his car. Rivera admitted at trial that at this point he was running with the knife from his car towards Amaral.

1. Though Rivera has not enumerated the general grounds, we find that the

3

evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Rivera was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Rivera relied on a justification defense, contending that he was on the ground and acting in self-defense when he grabbed the knife from his car. However, the evidence presented at trial included four eyewitnesses who testified that Rivera walked to his car to retrieve a knife, and security footage showing Rivera walking to his car and then running from his car toward the fight with Amaral, rather than Rivera being on the ground or surrounded by other people when he grabbed the knife from his car. See Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'") (citation omitted).

2. Rivera argues that the trial court erred by admitting improper character evidence involving previous independent acts committed by Rivera. Generally, evidence of an independent offense committed by a defendant is inadmissible and irrelevant in a trial for a different crime, unless the evidence is "substantially relevant for some purpose other than to show a probability that the defendant

4

committed the crime on trial because he has a criminal character." Peoples v. State, 295 Ga. 44, 53 (757 SE2d 646) (2014) (citation and punctuation omitted).[2]

First, Rivera contends that the court erred by admitting evidence that Rivera had been previously banned from the restaurant and had talked the owner into letting him stay at the establishment on October 16 before the fighting with Amaral began. Even assuming arguendo that the trial court erred in admitting evidence of this prior act, reversal is not required because any error was harmless. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Peoples, 295 Ga. at 55 (citation and punctuation omitted). In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. Id. Here, it is highly probable that any error in admitting the evidence about Rivera's previous ejection from the restaurant did not contribute to the jury's verdict because of the overwhelming evidence of Rivera's guilt, including Rivera's admissions both

_____

[2] Under the new Evidence Code, the admission of evidence of "other crimes, wrongs, or acts" at trials conducted after January 1, 2013, is governed by OCGA § 24-4-404 (b).

at trial and to detectives during initial questioning that he stabbed Amaral, and the testimony of multiple eyewitnesses and security footage contradicting Rivera's self-defense claim.  See Billings v. State, 293 Ga. 99 (3) (745 SE2d 583) (2013) (admission of evidence of prior shooting incident was harmless where the evidence of the defendant's guilt, including his admissions to the police, was overwhelming).

Second, Rivera asserts that the court erred by allowing evidence that several months prior to the murder, Rivera was in an argument with another man, approached the man, walked back to his car and retrieved a knife, and then chased the man with the knife.  "[P]roof of a distinct, independent, and separate offense is admissible if there is some logical connection between the separate offense and the crimes charged from which it can be said that proof of the one tends to establish the other."  Peoples, 295 Ga. at 53-54 (citation and punctuation omitted).

> Before evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to

6

prove the latter. <u>Williams v. State</u>, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). See also Uniform Superior Court Rule 31.3 (B).

<u>Davis v. State</u>, 279 Ga. 786, 787 (3) (621 SE2d 446) (2005) (punctuation omitted).

The State gave proper notice of intent to admit this act as a similar transaction, and the trial court held a hearing. See USCR 31.1, 31.3 (B) At the hearing, the State offered this previous act for the proper purpose of showing Rivera's bent of mind and course of conduct, explained that at least three witnesses would testify at trial about Rivera's involvement in this previous incident, and noted the similarity between this incident and the altercation with Amaral. The trial court determined that the State's evidence met the standard of proof necessary for the admission of this act as a similar transaction. Based on our review of the record, the trial court properly admitted this previous act as a similar transaction.

3. Rivera argues that trial counsel provided ineffective assistance by not submitting evidence to the jury, through the testimony of the medical examiner, of Amaral's toxicology report, which indicated that he had cocaine in his blood at the time of his death. Rivera asserts that this evidence was part of Rivera's

justification defense because it showed that Amaral was on drugs, had an inflated sense of self, and was a "greater opponent."

To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v.

8

State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

At the motion for new trial hearing, the medical examiner testified that the toxicology reports he received indicated that Amaral had both cocaine and alcohol in his blood. Although the examiner admitted that cocaine could make a person more violent, he explained that he did not know how cocaine affected Amaral in particular. Because there was no evidence regarding when Amaral had consumed cocaine or what, if any, effect it had on him at the time of the altercation, evidence regarding the toxicology report would likely have been excluded as irrelevant to Rivera's justification defense. See James v. State, 270 Ga. 675 (2) (513 SE2d 207) (1999) (exclusion of marijuana found in victim's blood was proper because the defense could not demonstrate how the use of drugs contributed to the victim's behavior or that it would have been relevant to the defendant's justification defense). Accordingly, counsel did not act deficiently by failing to present such evidence. See Barrett v. State, 292 Ga. 160 (3) (C) (1) (733 SE2d 304) (2012) (trial counsel did not act deficiently, where the evidence about the victim's drug use was irrelevant and inadmissible because it failed to show that the victim had used drugs at such a time as to have influenced his behavior).

Moreover, at the motion for new trial hearing, trial counsel offered a reasonable strategic reason for not introducing the toxicology report through the testimony of the medical examiner, including the following circumstances: (1) based on his legal research, counsel did not reasonably believe the toxicology report was admissible; (2) ample evidence had already been presented that Amaral was intoxicated and counsel believed that introducing additional evidence of cocaine would not have added to his theory of the defense; and (3) he tried to limit the medical examiner's testimony to the cause of death and the order of stab wounds because, based on past experience, he believed the examiner tended to be an advocate for the State. See Powell v. State, 291 Ga. 743 (2) (b) (733 SE2d 294) (2012) (finding no deficient performance because under the circumstances a defense lawyer might have reasonably concluded that little would have been gained by an objection); Ford v. State, 290 Ga. 45 (5) (c) (717 SE2d 464) (2011) ("as a general rule, matters of reasonable trial tactics do not amount to ineffective assistance of counsel").

Judgment affirmed. All the Justices concur.

Decided June 30, 2014.

Murder. Cobb Superior Court. Before Judge Grubbs.

Ashleigh B. Merchant, for appellant.

D. Victor Reynolds, District Attorney, John R. Edwards, Jason D. Marbutt, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.