303 Ga. 617
FINAL COPY

S18A0262. BROWN v. THE STATE.

BOGGS, Justice.

Appellant Kevon Brown was found guilty of murder, felony murder, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony, in the shooting death of the victim, Rodricus Morgan. He asserts on appeal that he was denied the right to the effective assistance of trial counsel. We disagree and affirm.[1]

---

[1] The crimes occurred on April 22, 2008. On July 22, 2008, a Fulton County grand jury indicted Brown on charges of malice murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Following a March 7-9, 2011 trial, the jury found him guilty on all counts, and he was sentenced to life plus five years in prison. The trial court purported to merge the felony murder counts into malice murder, and the aggravated assault and possession of a firearm by a convicted felon counts into the corresponding felony murder counts predicated on those crimes. Brown's motion for new trial was filed on April 8, 2011, amended by new counsel on October 9, 2014, and denied on August 1, 2017. His notice of appeal was filed on August 29, 2017. This case was docketed in this Court for the term beginning in December 2017 and submitted for a decision on the briefs.

The more than six-year delay in ruling on Brown's motion for new trial is unexplained. As we have emphasized on multiple occasions, it is the duty of the trial court

Construed in the light most favorable to the verdict, the evidence showed that in the early morning hours of April 22, 2008, an officer was informed that the victim had been shot and was lying on a sidewalk face down. The victim died from a gunshot wound to the back that went through his heart. A bullet recovered from his body was consistent with being fired from a .357 Magnum. Three days later, Benjamin Miller told police that he was related to Brown by marriage, and regularly bought drugs from him. Earlier on the day of the shooting, Miller had approached Brown about buying drugs. When Brown asked him why the victim was on the corner and whether the victim was selling drugs, Miller, who also knew the victim, assured Brown that the victim was only on the corner because he "just got off work." Miller stopped and talked to the victim briefly, and although he contemplated telling the victim to "get off that corner," he started walking away. Moments later, Miller heard Brown and the victim arguing, and witnessed Brown shoot the victim as he turned to run. Miller explained that he did not immediately report what he had witnessed because he

and the parties to ensure that post-conviction motions are decided without unnecessary delay. See Owens v. State, 303 Ga. 254 (4) (811 SE2d 420) (2018) (directing the Council of Superior Court Judges of Georgia to submit to this court for approval a proposed Uniform Rule of Superior Court to address the problem of unjustified delays in ruling on post-conviction motions).

"was kind of fearful for [his] life."

A second witness, Gary Lamb, was awakened by Brown and the victim. Lamb knew Brown as a drug dealer who carried a .357 Magnum, and knew the victim from the neighborhood. Lamb heard Brown say, "all right, man, go ahead, go ahead," and then witnessed Brown fire two shots at the victim as the victim turned to run away. Lamb explained that he did not come forward with what he witnessed for a couple of weeks "because of the safety of [his] family" and because he "had to do a lot of praying about it."

1. (a) Although Brown does not challenge the sufficiency of the evidence to sustain his convictions, it is this Court's practice to examine the record to determine the legal sufficiency of the evidence in murder cases. Having done so, we conclude the evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

(b) The State argues that the trial court improperly merged the aggravated assault and possession of a firearm by a convicted felon verdicts into the felony murder counts and failed to recognize that the felony murder counts were

3

vacated by operation of law. This argument may have merit. See Culpepper v. State, 289 Ga. 736, 737-738 (2) (715 SE2d 155) (2011) (felony murder convictions vacated by operation of law where defendant convicted of and sentenced for malice murder); Brown v. State, 302 Ga. 454, 456 (1) (c) (807 SE2d 369) (2017) (merger of aggravated assault into malice murder conviction); Smith v. State, 300 Ga. 532, 537 (4) (796 SE2d 671) (2017) (possession of a firearm by a convicted felon does not merge into malice murder). However, as we recently decided, "when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances." Dixon v. State, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). The State failed to raise merger error by cross-appeal (and the record reveals that it also did not raise it at the sentencing hearing). See Hood v. State, 303 Ga. 420, 425 (1) (d) (811 SE2d 392) (2018). As there are no exceptional circumstances here, we will not exercise our discretion to correct any error in sentencing. Id.

2. Brown asserts that he was denied his right to effective assistance of trial counsel. In order to succeed on his claim on ineffectiveness of trial counsel, Brown must prove both that his counsel's performance was professionally

4

deficient and that the deficiency resulted in prejudice to his case. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, he must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See id. at 687-690 (III) (A). In particular, a strategic and tactical decision, like that about the extent of cross-examination, "will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it." (Citation and punctuation omitted.) Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). And to establish prejudice, Brown must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, 466 U. S. at 694 (III) (B). "This burden, though not impossible to carry, is a heavy one." (Citation omitted.) Arnold v. State, 292 Ga. 268, 270 (2) (737 SE2d 98) (2013).

(a) Brown argues that trial counsel was deficient for failing to cross-examine Miller with his multiple prior arrests and felony convictions. Brown asserts that although the jury heard testimony of Miller's drug use, it should

5

have been presented with evidence showing that Miller had been convicted of felony drug offenses in 1986 and 1990, burglary in 1992, criminal trespass (reduced from theft by taking) in 1999, and deposit account fraud in 2001. At the hearing on the motion for new trial, trial counsel did not recall that Miller had prior convictions and did not explain why he did not impeach Miller with these convictions, stating only that it would be his normal practice to do so and if the convictions were in the file, he would have been aware. Counsel explained further that his trial strategy was to challenge Miller's and Lamb's identification of Brown as the shooter.

Former OCGA § 24-9-84.1 (b), applicable at the time of Brown's trial, provided in part:

> Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

All of the convictions Brown points to in his brief were entered more than ten years prior to his trial here, with the exception of the conviction for deposit

account fraud which was more than nine years old, and he points to no evidence of his release date for any time served.

Brown has not shown that the convictions more than ten years old would have been admitted under the stringent limitations of former OCGA § 24-9-84.1 (b). See Chance v. State, 291 Ga. 241, 246-247 (7) (728 SE2d 635) (2012). And the nine-year-old conviction still could have been excluded under former OCGA § 24-9-84.1 (a) (1) had the trial court determined that its probative value was outweighed by its prejudicial effect to the witness.

Even had one or more of Miller's convictions been admissible under former OCGA § 24-9-84.1, we cannot say that trial counsel acted objectively unreasonable in not trying to admit them. Instead, trial counsel effectively cross-examined Miller about his recent criminal drug use, eliciting Miller's admission that he bought drugs four or five times a day for about the past ten years, regularly bought drugs from Brown, and that he had used drugs 45 minutes before witnessing the shooting. Counsel used this evidence and the fact that the shooting took place in the early morning hours to argue that the witnesses identified the wrong person as the shooter, and asked why Miller waited days to contact the police. See Romer, supra, 293 Ga. at 344-345 (3) (a).

7

Moreover, Brown has failed to show a reasonable probability that the outcome of the trial would have been different had this evidence been admitted. Miller was not the only witness to the shooting. Lamb, who knew Brown, also identified him as the shooter and had previously observed Brown with the same type of gun used in the murder. Under these circumstances, in light of counsel's cross-examination of Miller, Brown has failed to show a reasonable probability that had the jury also been presented with Miller's prior convictions, he would have been acquitted.

(b) Brown argues that trial counsel was deficient in failing to cross-examine Miller, and another witness, Perry Cox, as to bias and motive. With regard to Miller, Brown argues that trial counsel failed to question Miller about whether he was angry because Brown had evicted Miller's family from their home in the neighborhood. This information was given by a witness to a defense investigator prior to trial.

Brown relies on the testimony at the hearing on the motion for new trial from the first counsel appointed to handle his case prior to it being transferred to trial counsel. First counsel testified that she would have elicited this fact from Miller during trial. Trial counsel testified that he reviewed Brown's file that was

8

given to him by first counsel, but was not asked about the information concerning the eviction of Miller's family. "[W]hen trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." (Citation and punctuation omitted.) Brown v. State, 302 Ga. 454, 461 (2) (b) (807 SE2d 369) (2017). Moreover,

> [w]hile other counsel, had they represented appellant, may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

(Citation and punctuation omitted.) Lewis v. State, 246 Ga. 101, 105 (3) (268 SE2d 915) (1980). And, in any event, Brown has not overcome the presumption that trial counsel's decision not to ask about the eviction was objectively reasonable, especially given the thorough cross-examination of Miller about his drug use and his delay in contacting the police. See Romer, supra, 293 Ga. at 344-345 (3) (a).

Brown also argues that trial counsel failed to cross-examine Perry Cox, a neighbor who saw the victim on the night of the shooting, to show that he was

a "jilted lover." Cox told a defense investigator, and testified at trial, that earlier on the night of the incident, he found his girlfriend and the victim in his home preparing to have sex. Cox demanded that they both leave his home. Brown asserts that although the victim was shot and killed later that night, law enforcement did not view Cox as a suspect and trial counsel did not develop this theory during cross-examination. However, Cox testified that he did not have a problem with his girlfriend having sex with other men for money, and trial counsel elicited from Cox that his girlfriend and the victim had "been together before," that he was not upset about the victim being in his home, and that once he asked them to leave, he went back to bed because he had to get up for work the next morning.

During closing argument, counsel argued that Cox had contact with the victim earlier in the night and had motive after finding the victim in his home without permission and with his girlfriend. As the record shows that counsel cross-examined Cox about this incident, and Brown presents no argument as to how counsel would have better developed a "jilted lover" theory, he has failed to show how counsel performed deficiently on this ground.

Finally, Brown argues that trial counsel was ineffective in failing to

10

question any of the State's witnesses about the existence of reward money for information about the shooting. Cox told an investigator that he, Miller, and a third person were to receive a reward for information. Brown again points to the testimony of first counsel assigned to his case that she "probably would have attempted to impeach based on that information." Trial counsel explained that he did not remember why he did not cross-examine Cox on this point. But even if counsel performed deficiently on this basis, Brown has not shown a reasonable probability that the outcome of his trial would have been different if counsel had cross-examined Cox, who did not witness the shooting, and Miller about reward money, as Lamb also identified Brown as the shooter.

Because Brown has not made the required showing under Strickland, his ineffective assistance of counsel claims fail.

Judgment affirmed.  All the Justices concur.

11

Decided May 7, 2018.

Murder. Fulton Superior Court. Before Judge Brasher.

Juwayn Haddad, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Joshua D. Morrison, Michael V. Snow, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.