312 Ga. 689
FINAL COPY

S21A0990.  DeVANNA v. THE STATE.

WARREN, Justice.

After a jury trial in June 2019, Alexander DeVanna was convicted of malice murder and other crimes related to the shooting death of his wife, Casey DeVanna.[1]  DeVanna appeals, contending

---

[1] The crimes occurred on August 26 and 27, 2017.  On November 28, 2018, a Clarke County grand jury indicted DeVanna for malice murder, two counts of felony murder (one predicated on aggravated assault and one predicated on possession of a firearm by a convicted felon), aggravated assault, two counts of possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime.  At a trial from June 3 to 7, 2019, a jury found DeVanna guilty of all counts.  On June 7, 2019, DeVanna was sentenced as a recidivist to life in prison without the possibility of parole ("LWOP") for malice murder and to two consecutive five-year prison sentences for possession of a firearm by a convicted felon and possession of a firearm during the commission of a crime.  The felony murder counts were vacated by operation of law, the aggravated assault count was merged into the malice murder count, and one of the two possession-of-a-firearm-by-a-convicted-felon counts merged into the other one for sentencing purposes.  Through trial counsel, DeVanna filed a timely motion for new trial.  Through appellate counsel, DeVanna filed an amended motion for  new trial.  On December 21, 2020, following a hearing, the trial court entered an order granting in part and denying in part DeVanna's amended motion for new trial.  The trial court concluded that it improperly sentenced DeVanna as a recidivist because his previous felony convictions — all from Florida — would not have been felonies in Georgia.  The trial court denied DeVanna's amended motion for new trial as to all of his other arguments. On January 20, 2021, DeVanna was resentenced to LWOP plus 10 years in prison.  DeVanna filed a timely notice of appeal on

that his trial counsel rendered ineffective assistance under the Sixth Amendment to the United States Constitution by failing to request a proper jury instruction on the legal principle that a convicted felon can possess a firearm while acting in self-defense under certain circumstances. We disagree and affirm DeVanna's convictions.

1. (a) The evidence presented at DeVanna's trial showed that DeVanna and Casey married in May 2017 and began living in St. Petersburg, Florida. Several months into their "rocky" marriage, the couple decided to go on a road trip and camp in Georgia before heading out west. On August 26, 2017, DeVanna and Casey, along with their cat Gizmo, checked into Room 226 at the Best Western Hotel on Milledge Avenue in Athens, Georgia. On the afternoon of August 27, after check-out time, housekeeping staff found Casey's body lying on one of the two beds in Room 226 with her legs hanging off of the side of the bed and her feet touching the floor. A staff member called 911, and shortly thereafter, local law enforcement,

December 22, 2020. The case was docketed to the August 2021 term of this Court and orally argued on September 21, 2021.

2

the Athens-Clarke County Fire Department, and National EMS all arrived at the hotel.

Officers observed that "a lot" of blood from Casey's nostrils and mouth had dried on her face. She was lying sideways across the twin bed furthest from the door with her legs dangling down the side of the bed as if she had been sitting on the side of the bed and then lay backward. An officer later testified that pillows were lying on top of Casey's arms and that four drinks were sitting on the nightstand upright and undisturbed, adjacent to the bed where she lay. A detective testified that he saw no evidence of any sort of violent struggle in the room. He also testified that when some of the other first responders present at the scene rolled Casey over on the bed to prepare to remove her body, he observed blood pooling out of her head, which he said indicated that Casey's body had not been moved since she was killed.

Upon processing the crime scene, law enforcement officers found, among other things, a piece of G.E.D. paperwork and a high school diploma belonging to "Alexander T. DeVanna," a receipt from

3

a pizza shop located across the street from the Best Western with the name "Alex" and room number 226 listed on the receipt, and shotgun shell casings from the nightstand.

Six days later, DeVanna checked into a campground near Ocala, Florida. Athens-Clarke County law enforcement officers began tracking the location of his cell phone that same day and issued a be-on-the-lookout alert to local law enforcement in Marion County, Florida. The next morning, local officers on a routine patrol identified DeVanna and his car at a campground bathroom. Officers arrested DeVanna and took him into custody.

Two Athens-Clarke County detectives traveled to Florida and, after advising DeVanna of his rights under *Miranda*,[2] conducted a video-recorded interview. During that interview, DeVanna claimed that Casey found text messages on his phone between Paige Vargas (one of DeVanna's former romantic partners) and DeVanna,[3] that

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[3] Evidence about the content of those messages is recounted later in this division.

Casey became angry at him, and that he later awoke to Casey loading a round into the chamber of a gun, which she pointed at DeVanna's head. He further claimed that in the ensuing struggle over the firearm, "his pinky might have fired the weapon." One detective observed scratches on the side of DeVanna's torso during the interview.

A search of DeVanna's campsite in Florida revealed a Taurus 9mm pistol that a GBI firearms examiner later testified contained characteristics that matched those on the bullet recovered from Casey's body. That search also revealed two identification cards belonging to Casey and a receipt from an Athens RaceTrac ATM dated August 27.

The State also introduced evidence that Dakota Waite, a close friend of DeVanna's, exchanged messages with DeVanna through Facebook Messenger a week before Casey's death. Specifically, DeVanna messaged Waite saying, "Going to shoot my wife and myself prob [sic] today," and "going to shoot dope today." DeVanna sent Waite a photo of himself holding a gun to his head and of a self-

inflicted cut from DeVanna's wrist up to his elbow. In response, Waite asked DeVanna, "Where's yer [sic] wife?!" DeVanna responded "I'm about to shoot her in the head and go get f\*\*\*ed up one last time."

The State also introduced evidence of other social media and text messages DeVanna sent on the night of, and the night after, Casey's death. On the night of August 26 — the night of the shooting — DeVanna sent a Facebook message to a different friend, Jarrett Russo, stating, "I am in Athens, Georgia, about to leave my wife." DeVanna went on to say, "We planned on camping in GA but she's out of her meds and is making it hard for me not to hurt her lol." DeVanna also told Russo that while stopped at a gas station in Georgia during their road trip, Casey had thrown his possessions out of the car and driven off without him, but that she returned later to retrieve him and help him pick up his belongings. DeVanna told Russo that, after this episode and upon arriving at the hotel, Casey was "passed out now haha." He also wrote, "I got to leave before I end up in prison" and suggested that he might steal Casey's car.

6

Russo responded, "That's grand theft auto" and "jail either way."

The next day, DeVanna sent a text message to a third friend, Tanner Hackney, saying, "I love you brother but this will prob [sic] be the last time you hear from me." Hackney told DeVanna to call him and that "you can't just leave me hanging here." DeVanna responded, "I shoot her man[.] I f***ing shoot her . . . ." Hackney then began calling DeVanna until DeVanna called him back at approximately 2:00 p.m. DeVanna told Hackney that he woke up to Casey pointing a gun at his head and that he got up and wrestled the gun from her and "he had lost his anger and he shot her in the f***ing head."

DeVanna had also exchanged Facebook messages with Paige Vargas. On August 26, DeVanna messaged Vargas and told her that he was in Georgia "[b]ecause I'm a dumba** who got married." DeVanna wrote that the "[f]irst time I ever hit a woman was yesterday." DeVanna sent Vargas a photo he took the night before of the cut that spanned from his wrist to his elbow. He then messaged her, "I [sic] about to kill her man . . . godamn [sic]." He

7

then sent Vargas a photo of him pointing a gun at Casey's head while she was sleeping. Vargas urged DeVanna to "cool down" and to not "be dumb," but DeVanna responded, "If I let her live, she will continue to degrade me make [sic] me do more stupid sh*t." Hours later, DeVanna sent Vargas a message saying, "I did it" and "I'm so sorry." The next afternoon, DeVanna called Vargas and told her that he and Casey were wrestling over a gun and it went off. DeVanna told Vargas he intended to get a "bunch of drugs and try and kill himself."[4]

The State also presented evidence that around 12:50 a.m. on August 27, DeVanna went to an ATM at a nearby RaceTrac convenience store and made two withdrawals from Casey's account. Over the next six days, DeVanna made additional withdrawals from

---

[4] The State also admitted into evidence Facebook Messenger conversations DeVanna had with various other friends who did not testify at trial. Those records showed DeVanna making the following statements on August 19, 2017, a week before the shooting: "I'm going to shoot her then myself"; "I'm going to shoot my wife and myself"; and "I'm going to do it today." On August 27, in response to a friend's question about whether DeVanna had "kill[ed] someone," DeVanna responded with a frown symbol and "yes." DeVanna does not challenge on appeal the admission of these messages at trial.

the account, including several in St. Petersburg, Florida.

The GBI forensic pathologist who performed Casey's autopsy testified that Casey suffered a gunshot wound to her face fired from an "intermediate range" likely in excess of six inches, and that the trajectory of the bullet was consistent with the shooter standing and Casey sitting. The pathologist characterized Casey's cause of death as a gunshot wound to the head and the manner of death as homicide. The autopsy showed that Casey suffered an additional blunt force injury to her head.

The GBI forensic toxicologist who performed a drug screen on Casey testified that it revealed an analog of fentanyl, a "C[entral] N[ervous] S[ystem] depressant" that will "slow down your brain" and "motor functions" and make you "drowsy," "sleepy," "confused," and dizzy. She testified that THC was also found in Casey's system.

DeVanna — who had stipulated to his status as a convicted felon — raised both self-defense and accident as defenses and testified in his own defense. He claimed that Casey's mood "was fluctuating" and "was sometimes high and then sometimes real low."

9

He testified that, on the night of her murder, Casey went to sleep before he did, and that, after he went to sleep, he awoke to the sound of Casey "pulling back the slide" of a handgun and felt her pressing the gun to his head. DeVanna recounted that Casey then said something to the effect of, "You're messaging her again." DeVanna claimed that he began "wrestling [Casey] over the gun," took possession of the gun from her, and "pushed her down" before "she came back at [him]." He created some distance between the two of them, but then Casey latched onto his side and scratched him, which was "right about [the] time . . . the firearm went off." DeVanna said he could hear Casey "gurgling" as she struggled to breathe following the gunshot. After the gun went off, DeVanna said he "had a bunch of emotions," "picked up [his] backpack and firearm [and Casey's] medication . . . and just . . . left."

(b) DeVanna's trial counsel requested the pattern jury instructions on justification, self-defense, mistake, and accident. The trial court gave the pattern charge on justification, which included the charge that "[a] person is not justified in using force if

10

that person is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony. Possession of a firearm by a convicted felon is a felony offense under Georgia law." The trial court also instructed that "[i]f you believe that the defendant was justified under the instructions that the Court has given you, then it would be your duty to acquit the Defendant."

DeVanna also requested an instruction on when a convicted felon may use a firearm in self-defense, and the trial court read this charge verbatim to the jury:

> When a felon is in imminent peril of great bodily harm or reasonably believes himself to be in such danger and with preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it continues does not violate the statutory prohibition against possession of a firearm by a convicted felon.

The jury found DeVanna guilty of malice murder, two counts of felony murder, aggravated assault, two counts of possession of a firearm by a convicted felon, and possession of a firearm during the

11

commission of a crime. Represented by new counsel at the motion-for-new-trial stage, DeVanna argued in his amended motion that the trial court gave a conflicting charge on justification: on the one hand, the trial court instructed that a justification defense was not available to DeVanna because he was committing the felony of possession of a firearm by a convicted felon, but on the other, it instructed that if DeVanna was, in fact, possessing a gun to defend himself, that possession would be lawful. DeVanna argued that, because trial counsel did not object to this conflicting charge, his counsel provided ineffective assistance. The trial court denied DeVanna's amended motion for new trial as to his ineffective assistance of counsel claim, reasoning that "[t]he two jury instructions at issue were correct statements of the law. Thus, trial counsel's representation was neither deficient nor prejudicial."

2. DeVanna's sole enumeration of error on appeal is that his trial counsel provided ineffective assistance under the Sixth Amendment to the United States Constitution because he failed to request a proper jury instruction explaining that a convicted felon

12

can possess a firearm when acting in self-defense. To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

In arguing that his trial counsel requested an inadequate justification instruction and was thus ineffective, DeVanna contends that the instruction the trial court gave to the jury was problematic for multiple reasons. First, DeVanna argues that the instruction his trial counsel requested and that the trial court gave was internally inconsistent, contradictory, and misleading because it required that a felon have a firearm "with preconceived design," but also required that the felon's possession of the firearm be for a period of time "no longer than that in which the necessity or apparent necessity to use it continues."[5] Second, he asserts that the instruction given was incorrect under our recent decision in *Johnson v. State,* 308 Ga. 141

---

[5] Trial counsel relied on the jury instruction from *Little v. State*, 195 Ga. App. 130, 131 (392 SE2d 896) (1990), as the source of his requested jury instruction on when a convicted felon may use a firearm in self-defense. In *Little*, the Court of Appeals recited a jury instruction, requested by Little at trial, based on the Supreme Court of California's decision in *People v. King*, 582 P2d 1000, 1006-1007 (Cal. 1978). But it appears that the Court of Appeals transcribed the instruction from *King* incorrectly. Compare *King*, 582 P2d at 1007 ("*without* preconceived design") with *Little*, 195 Ga. App. at 131 ("*with* preconceived design") (emphasis supplied). But see *Waugh v. State*, 218 Ga. App. 301, 303 (460 SE2d 871) (1995) (describing the instruction in *Little* as "appear[ing] to be a correct statement of the law"). In noting this apparent error, we take no position on the correctness of the instruction from *King* that was repeated (albeit with a transcription error) in *Little*.

(839 SE2d 521) (2020), where we held:

> A person is justified in threatening or using force against another, or in engaging in conduct that is otherwise prohibited under [the carrying and possessing firearms part of the Code], when and to the extent that he or she reasonably believes that such threat or force or conduct otherwise prohibited under [the carrying and possessing firearms part of the code] is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force[.]

Id. at 145 (punctuation omitted). He specifically contends that the instruction that was given "forced the trier of fact to disregard [DeVanna's] justification defense" and "made clear to the . . . jury that [DeVanna's] illegal possession of this firearm, even during the struggle in the defense of self, barred [DeVanna] from employing a justification defense." DeVanna thus argues that trial counsel should have requested the following instruction on justification:

> If you, the jury, find and believe that the facts presented at trial demonstrate that at the time of the killing, the accused possessed a firearm solely to defend himself from the attack of the deceased, then the law charged on justification/self[-]defense can apply during your deliberations, even though the parties have stipulated to the fact that Appellant is a convicted felon. The facts of this case are solely for you, the jury, to decide.

15

Here, however, we need not decide whether trial counsel was constitutionally deficient in failing to request the justification instruction DeVanna proffers on appeal, because DeVanna has failed to carry his burden to show that he suffered prejudice from any such deficiency. See *Lawrence,* 286 Ga. at 533-534. Even assuming for the sake of argument that the justification instruction trial counsel requested was confusing, misleading, or even erroneous, DeVanna has not shown a reasonable probability that the outcome of the trial would have been different had trial counsel requested the instruction that DeVanna now asserts was necessary to present his self-defense claim to the jury. See *Strickland*, 466 U.S. at 694 (III) (B) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). That is because the State presented an overwhelming amount of evidence of DeVanna's guilt, including messages DeVanna sent to multiple people in the week leading up to Casey's shooting saying that he wanted to kill Casey by shooting her in the head. That evidence also included the photo DeVanna sent Vargas of DeVanna pointing a

16

handgun at Casey's head while she was sleeping on the night of her death and a message after the shooting telling her "I did it," as well as DeVanna's phone call to Hackney the day after Casey's shooting in which he stated that "he had lost his anger and he shot her in the f***ing head." Further, the State presented testimony that DeVanna and Casey's hotel room showed no sign of a struggle. DeVanna's claim of ineffective assistance of counsel therefore fails. See *Turner v. State*, 308 Ga. 537, 540-541 (842 SE2d 40) (2020) (concluding that appellant could not establish prejudice in light of the "strong" evidence of his guilt); *Hinton v. State*, 304 Ga. 605, 608 (820 SE2d 712) (2018) ("Because the evidence of Hinton's guilt was strong, and any evidence supporting a voluntary manslaughter theory was weak, Hinton has failed to establish a reasonable probability that the jury would have reached a different result, even if it had been charged on voluntary manslaughter.").

*Judgment affirmed. All the Justices concur.*

Decided October 19, 2021.

Murder. Clarke Superior Court. Before Judge Haggard.

*Brian Steel*, for appellant.

*Deborah Gonzalez, District Attorney, Jeffrey P. Kwiatkowski, Gerald L. Henderson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Parisia F. Sarfarazi, Assistant Attorneys General*, for appellee.