309 Ga. 747
FINAL COPY

S20A0856.  HARRISON v. THE STATE.

BOGGS, Justice.

In 2009, Appellant Richard James "Paul" Harrison was tried on charges of murder and felony murder in connection with the shooting death of Dewey Lamar Johnson, but the trial ended in a mistrial when the jury was unable to reach a verdict. Appellant was retried in 2011 before another jury and found guilty of murder and felony murder. He was sentenced to life in prison, his amended motion for new trial was denied, and he appeals, asserting five enumerations of error: four claims of ineffective assistance of counsel and a merger error in sentencing. For the reasons stated below, we affirm the judgment of conviction and sentence on the malice murder count. The felony murder conviction and sentence the trial court erroneously imposed and then purported to "merge" with

the malice murder conviction stand vacated as a matter of law.[1]

1. Construed in the light most favorable to the jury's verdicts, the evidence showed that on Friday, September 7, 2007, Appellant was living in Alma with his cousin Kenneth "Kenny" Harrison, Kenny's wife Terretha Johnson, and Kenny and Terretha's children. Kenny was known in the community as a drug dealer. In addition to selling drugs, Kenny also bought or traded drugs for stolen copper wire, burned off the insulation, and sold it. On the evening of September 7, as Appellant and Kenny were driving in Kenny's SUV around the Alma area with a load of wire, they encountered the victim, whom Kenny knew from prior drug sales. Kenny asked the victim if he wanted to make some money helping burn the wire, and

[1] The crime occurred on September 7, 2007. On December 18, 2007, a Bacon County grand jury indicted Appellant for malice murder and felony murder. A 2009 trial ended in a mistrial after the jury was unable to reach a verdict. In a second jury trial from August 31 to September 1, 2011, Appellant was found guilty on both counts, and the trial court erroneously sentenced him to serve life in prison on both counts and then purported to merge Count 2 into Count 1. On September 20, 2011, Appellant's trial counsel filed a motion for new trial, which was amended by subsequent counsel on October 23, 2019. On December 26, 2019, the trial court denied Appellant's amended motion for new trial. Appellant filed a timely notice of appeal on January 10, 2020, and the case was docketed in this Court to the April 2020 term and submitted for a decision on the briefs.

the victim got into the vehicle with Kenny and Appellant.

The three men snorted some cocaine, drove out into the country, entered some nearby woods, and began unloading spools of wire. Appellant and the victim got into an argument, which escalated into "tussling," and Appellant put the victim in a choke hold until he fell to the ground, unconscious. Appellant then walked back to Kenny's vehicle, took Kenny's pistol from under the front seat, walked over to the victim who was lying motionless on the ground, and shot him twice in the back of the head.

Kenny asked Appellant, "What the hell is you doing?" and Appellant responded, "He shouldn't have tried me." Kenny then told Appellant to help him reload the spools of wire back into the vehicle and take them to another location in the woods. Kenny told Appellant to get rid of the gun — which was never found — and they went to a local club with a friend, Thomas Lee. At some point Kenny left the club, went to the home of an acquaintance, Gwen Tyre, and then returned home about 4:00 or 5:00 a.m. and went to bed.

A few hours after arriving back home, Kenny took Terretha

and the children fishing. They went to "two or three ponds" to fish, including a spot near the woods where Kenny had seen Appellant shoot the victim the night before. Terretha testified that she and Kenny saw the body lying there, so Terretha told Kenny to go check if the man was dead and to call police. Kenny called the police around 1:00 p.m. on Saturday, gave his name to the dispatcher, and described where the body was located. The police could not find the victim, but a few hours later a passerby discovered the body and called police. Terretha testified at trial that Appellant acknowledged to her that he had shot the man that Terretha and Kenny found.

Appellant told investigators that he had not seen the victim in over a month. He stated that he was at his cousin Kenny's house with Kenny, Terretha, and the children all day on the day of the shooting and never left the house that night. Appellant added that he did not wake up on Saturday morning until after Kenny had gone fishing with his family. He insisted that he had no involvement in the death of the victim.

At trial, Appellant testified in his own defense and repeated

that he knew nothing about the shooting. Instead of insisting that he never left Kenny's house, however, Appellant testified that at 8:00 on Friday night he went with Kenny and Lee and "some females" to a nightclub, where he stayed until 12:00 a.m., when they went to Tyre's house. Appellant, Lee, and the women stayed the night at Tyre's house, and the women dropped Appellant off at Kenny's house the next morning. Appellant testified that "Kenny's wife let me in" and that he went "straight to bed" and woke up around 10:00 or 11:00 a.m. when the others came back from fishing and told him what they had found. Appellant testified that he did not know Kenny owned a gun and that he had nothing to do with the killing of the victim.

Appellant has not challenged the sufficiency of the evidence to support his conviction. However, as is this Court's practice in murder cases, we have reviewed the record to determine the legal sufficiency of the evidence.[2] We conclude that the evidence presented

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the

at trial and summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes charged. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In four enumerations of error, Appellant contends that he was denied the effective assistance of counsel at trial. To prevail on his claims of ineffective assistance, Appellant must prove both that the performance of his lawyer was professionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland* test. See *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018). To prove deficient performance, Appellant must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional

term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. ___, ___ (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires a defendant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct." (Citation and punctuation omitted.) *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). This burden, although not impossible to carry, is a heavy one. *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013). We conclude that Appellant has failed to show constitutional deficiency on the part of his trial counsel.

(a) In two enumerations of error, Appellant contends that trial counsel was ineffective in failing to object on the grounds of inadmissible hearsay and improper bolstering when the prosecutor twice asked Terretha whether Kenny told her he was at the scene and saw Appellant shoot the victim. Appellant also contends that trial counsel likewise was ineffective in failing to raise the same objections when a GBI agent testified that Terretha stated during an interview that Kenny told her that he saw Appellant shoot the victim.

With respect to Terretha's testimony, at the hearing on Appellant's motion for new trial, trial counsel acknowledged that the testimony was hearsay and bolstering, but explained:

> You know, our whole defense was basically that this woman was a less-than-honest person, that she was a liar. . . . And it — by that time, it would probably have already been put into evidence that she had taken and failed a lie detector test.[3] She had changed her testimony after that. . . . [W]hen she changed her testimony . . . it was not put to a lie detector test. . . . [T]hen, the things she said, my whole — our whole defense was, it doesn't matter what she says; it's not believable. . . . [O]ur whole position was, you ought not to listen to anything this woman says regardless.

Trial counsel was asked whether he did not object as a matter of "trial strategy," and he responded, "Yes, I would say so."

Similarly, with respect to the GBI agent's testimony, trial counsel was asked if there were "hearsay concerns" and responded, "Well, yes and no. I kind of get back to the same thing. Like I say, our whole defense was that her testimony was — was immaterial." Appellate counsel then asked trial counsel if the agent's testimony

---

[3] Trial counsel's recollection was accurate; the State had elicited that testimony from Terretha before discussing Kenny's statement.

"suggests a problem with an improper bolstering of Kenny's testimony?" Trial counsel responded:

> Well, in one sense; but in another sense, our defense, as I recall, is it — seems like my name for Kenny was "Kenny, the Killer." Our defense was that Kenny killed him — killed [the victim] — and that she was a part of the coverup helping Kenny lay the blame on [Appellant]. And so — so to some extent, we felt like when she's saying these things, she is bolstering our position because she is helping Kenny hide the truth.

When asked, "So, in other words, were you following the trial strategy, you believe[?]" counsel responded, "Well, yes. . . . [L]ike I say, I felt like this played into what we were trying to sell to the jury." He added that he preferred to use cross-examination to highlight Terretha's inconsistent statements: "I wanted as many different stories from her as possible."[4]

---

[4] On cross-examination, Terretha acknowledged that she initially told investigators that she knew nothing about the shooting, before stating that Appellant told her he shot the victim; that she had also told investigators that Kenny told her a man named Ashley Carter shot the victim; and that she told investigators that Thomas Lee and another individual returned home with Kenny on the night of the incident. In addition, Terretha testified at one point during cross-examination that Kenny had *not* told her that he was present when Appellant shot the victim. And in a letter written to Kenny in jail, which trial counsel had Terretha read aloud to the jury, she asked, "Why didn't you just tell me that? Did you see everything that happened? . . . You actually saw everything that happened. Did you see Ashley Carter shoot Dewey?"

Finally, trial counsel testified that he was also Appellant's trial counsel in his 2009 trial, which ended in a hung jury and a mistrial, and that he had used the same defense strategy in that trial.

> The standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic[s], effectiveness is not judged by hindsight or result.

(Citation and punctuation omitted.) *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012). And "[a]n attorney's decision about which defense to present is a question of trial strategy." (Citation and punctuation omitted.) *Bryant v. State*, 306 Ga. 687, 697 (2) (c) (832 SE2d 826) (2019). Here, trial counsel articulated a reasonable strategy in pointing out Terretha's changing story rather than objecting to one version of that story as hearsay. See *Holmes v. State*, 293 Ga. 229, 233 (3) (b) (744 SE2d 701) (2013) (trial counsel not deficient in decision not to object to hearsay because he believed that testimony supported appellant's defense). See also *Beck v. State*, 285

Ga. App. 764, 766 (2) (647 SE2d 408) (2007) (Trial counsel's strategy to use hearsay testimony to support appellant's defense rather than to object, "though unsuccessful, is not deficient performance."). "Thus, we cannot conclude that in failing to raise a hearsay objection, counsel was pursuing an unreasonable strategy." *Holmes*, 293 Ga. at 233 (3) (b). Similarly, as trial counsel testified here, not objecting to testimony as bolstering can be part of a reasonable trial strategy calculated to cast doubt on the State's belief in an unreliable witness, among other reasons. See *Jones*, 292 Ga. at 602 (7) (d). Appellant therefore has failed to carry his burden to prove he was denied effective assistance of counsel. Id.

(b) In his third and fourth enumerations of error, Appellant contends that trial counsel was ineffective in failing to raise a Confrontation Clause objection to Terretha's testimony regarding her polygraph examination and in failing to request the pattern jury instruction on polygraph evidence. But at the hearing on Appellant's motion for new trial, trial counsel noted that the case was not a typical situation involving polygraph tests, where "either there's a

stipulation or there's not. And if there's not, they're generally not put in."[5] Here, no results of a polygraph examination were entered into evidence, and the examiner did not testify. Rather, the evidence came from the witness herself, Terretha, who testified that she lied before the polygraph was administered, that she changed her story after she was told she failed the polygraph, and that she was not thereafter given another polygraph examination by the State.

However, the question presented here is not the general admissibility of polygraph results, but whether trial counsel was constitutionally deficient in failing to object to the testimony regarding the polygraph administered to Terretha. Trial counsel testified, "I felt like we wanted it in and so I wasn't going to object. . . . I just felt like under the fact . . . situation that it was beneficial to us." He added, with reference to Appellant's mistrial

---

[5] This was a correct statement of the law at the time of Appellant's trial in 2011, subject to certain exceptions. Compare *State v. Chambers*, 240 Ga. 76, 76 (239 SE2d 324) (1977) (results of polygraph may be admitted upon express stipulation by parties), with *Newberry v. State*, 260 Ga. 416, 418-419 (3) (395 SE2d 813) (1990) (evidence that witness has taken polygraph admissible without stipulation to explain witness' conduct, if conduct relevant to issues on trial).

due to a hung jury, "It had worked the first time and I wanted to stick with what I felt like worked." As in *Delaney v. State*, 304 Ga. 256, 258 (2) (818 SE2d 559) (2018), "the testimony was utilized by trial counsel to support the defense's theory that [Kenny] was the actual murderer." Trial counsel argued that the failed polygraph and its aftermath demonstrated that Terretha was willing to lie at her husband's direction in order to shield him, and on cross-examination he established that Terretha was never given another polygraph after she changed her story. Trial counsel used this evidence to argue that the State was incurious about whether Terretha was telling the truth "[a]fter she said what . . . they wanted her to say."

> In short, defense counsel used the polygraph-examination testimony to cast suspicion on [Kenny and Terretha], the State's star witness[es], and cast doubt on the State's investigatory tactics. Trial counsel's decision not to object to the polygraph testimony was not unreasonable, and, thus, trial counsel did not perform deficiently in this regard.

*Delaney*, 304 Ga. at 258 (2). Appellant therefore has failed to demonstrate that his trial counsel was deficient in failing to raise

this objection.

With respect to the pattern instruction on polygraph evidence, trial counsel did not have an independent recollection of why he did not request the charge, but he agreed that if he thought it would have helped his defense, he would have requested it. And he testified that his failure to request the charge "would make sense, based on what we were doing to not necessarily want to go there." He believed that not requesting the charge did not hurt his defense: "I felt like the polygraph itself — the fact of it was that the only polygraph [evidence] that was ever admitted into trial was that one of the main witnesses against us had been untruthful."

The pattern jury instruction, moreover, goes primarily to the expert opinion testimony of a polygraph examiner as to the results of the examination that he or she administered to a witness. Here, the contents of such a charge would have not aided and might have harmed trial counsel's theory of the case. The pattern jury instruction provides:

There has been certain evidence admitted during the

trial concerning a polygraph test and the polygraph examiner's opinions and conclusions as to its results. Polygraph evidence is considered opinion evidence and is governed by the law concerning opinion evidence as has been/will be given to you.

A polygraph examiner's opinion can only be used to indicate whether, at the time of the polygraph examination, the defendant/witness believed that he/she was telling the whole truth. You are not bound by the polygraph examiner's conclusions, and the examiner's testimony is not controlling on the issues and may be entirely disregarded by you. It is for you to decide what weight, if any, should be given to the evidence concerning the polygraph test, its results, and the examiner's opinions and conclusions.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.11 (4th ed. 2020); see *Chambers*, 240 Ga. at 80. Aside from the fact that no such opinion testimony was given, this instruction could have injected doubt into the jury's deliberations regarding trial counsel's theory of the case, by suggesting that the fact that Terretha failed a polygraph test could be disregarded entirely. Appellant therefore has not demonstrated that his trial counsel was deficient in failing to request the pattern jury instruction.

3. Finally, Appellant asserts error in sentencing, and the State concedes this error. The trial court pronounced sentence as follows:

"All right. Mr. Harrison, having been found guilty of Murder on Count 1, I'll sentence you to life in prison. Having been found guilty of Felony Murder on Count 2, I will sentence you to life in prison. I will merge Count 2 into Count 1." The judgment of conviction and sentence shows: "Ct. 1: Life; Ct. 2: Life (will merge with Ct 1)."

> The record shows that the trial court sentenced [Appellant] to separate life sentences for malice murder and felony murder. However, because there was only one homicide victim, [Appellant] could not be sentenced for both malice murder and felony murder. See *Martinez v. State*, 283 Ga. 122, 123 (657 SE2d 199) (2008).

*Krause v. State*, 286 Ga. 745, 753 (9) (691 SE2d 211) (2010). The trial court erred in pronouncing a sentence on a count that merged. The court also erred in merging Count 2 into Count 1, because the felony murder count was vacated by operation of law, so no judgment of conviction or sentence could be imposed thereon, and appellant properly could be sentenced only to one life term. Appellant's purported judgment of conviction and sentence on the vacated count of felony murder therefore stands vacated as a matter of law. Id.

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Murder. Bacon Superior Court. Before Judge Brooks.

*David J. Walker*, for appellant.

*George E. Barnhill, District Attorney, Alexander J. Markowich, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.