NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 18, 2023

S23A0057.  FULLER v. THE STATE.

COLVIN, Justice.

Following a jury trial, Brandon Fuller was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Daniel Landy.[1]  On appeal, Fuller alleges that he was denied constitutionally effective assistance of counsel and that the cumulative effect of trial counsel's

_____

[1] On October 26, 2016, a Chatham County grand jury indicted Fuller for malice murder (Count 1), felony murder predicated on aggravated assault (Count 4), aggravated assault (Count 3), and two counts of possession of a firearm during the commission of a felony (Counts 2 & 5).  A jury trial was held December 10 through 12, 2019, and the jury found Fuller guilty of all counts.  Fuller was sentenced to life in prison for malice murder and a consecutive 5 years' probation for the firearm charge listed in Count 2.  All remaining counts were either vacated by operation of law or merged for sentencing purposes.  Fuller timely filed a motion for new trial on January 21, 2020, which was amended through new counsel on June 3, 2020.  After a hearing, the trial court denied the motion as amended on June 21, 2022.  Fuller timely filed a notice of appeal.  The appeal was docketed to the term of this Court beginning in December 2022 and was submitted for a decision on the briefs.

errors prejudiced him. For the reasons set forth below, we affirm.

1. In August 2016, Fuller shared a one-year-old child with Crystal Fludd. Landy was living with Fludd and the child, with whom he had developed a father-daughter-type bond. Approximately one month prior to the shooting, Fuller sent Fludd a direct message on social media threatening to kill Landy and Fludd and take the child. One week prior to the shooting, Fludd threw a birthday party for the child. Fuller was invited to the party but did not attend. Landy, however, did attend. After the party, Fludd posted pictures on social media of Fludd, Landy, and the child together. Though Landy and Fuller had never met in person, Fuller knew who Landy was based upon the pictures Fludd posted of him on social media.

During the late evening hours of August 19, 2016, Lorenzo Stevens was sitting outside of a gas station convenience store located in Chatham County. There, he saw Fuller and Landy talking as they exited the store. Stevens testified that neither man sounded upset, but that they were arguing. At one point, he heard Landy

2

say, "I take care of that baby, I just gave that baby a birthday party," to which Fuller said, "[W]ell, okay, so you did that." Stevens testified that he saw Landy slap Fuller and that Fuller looked shocked. Stevens testified that he "pull[ed his] attention away from them [be]cause I saw where this was goin[g]." Shortly thereafter, Stevens heard gunshots and saw Landy running away from the gunfire. Stevens did not see Landy with a gun at any time.

Surveillance footage from the convenience store was recovered and presented to the jury. The footage, which is approximately seven minutes in length, showed Fuller and Landy waiting in separate lines inside the convenience store. Landy paid for his items and then walked by Fuller, who was still waiting in line. Fuller appeared to call over to Landy, and the men began talking. After two and a half minutes, Fuller paid for his items, and the men continued to talk outside the store. A few minutes later, the men started to argue. A little over one minute later, Fuller pulled a gun from his pocket and pointed it at Landy. Landy put his hands up and started to back away. Fuller tried to fire the gun, but it did not

3

shoot.  Landy continued to back away, and Fuller pursued him while racking the slide of his gun.  Fuller then successfully fired the weapon twice at Landy as Landy ran away.  Thereafter, Fuller put the gun back into his pants pocket and casually walked away.

When the police arrived at the scene, they found Landy in the street.  He was unresponsive and had suffered two gunshot wounds to the back.  During their investigation, the police located two live 9mm cartridges in front of the convenience store – one had a firing pin impression, and one did not.  At trial, the State presented testimony to the jury that this physical evidence showed "there was a misfire . . . the hammer or firing pin struck the back [of the cartridge] and it did not fire and it was then ejected from the pistol." The presence of the live round without the firing pin impression showed that it was manually ejected from the firearm rather than through a trigger pull.

The police spoke with Fludd, and she identified Fuller as the shooter in the video.  She also showed officers a social media post from Fuller's page wherein he shared a local news article about the

4

shooting approximately 30 minutes after it had occurred.

Fuller was arrested and, during an interview with investigators, he stated that he recognized Landy at the convenience store and, after engaging in conversation, told Landy to stop "disrespecting" him by "claiming" his child. Fuller stated that Landy "ran up" on him, saying, "I'm f***ing [Fludd] now. I'm her stepdad. That's my daughter," after which Fuller "got mad." When an investigator asked Fuller if he "got mad and blacked out," he replied, "Nah, man." Fuller admitted to shooting Landy, but claimed he did so in self-defense. He admitted that, when he brandished the gun, Landy started running and Fuller shot as Landy fled. He also recalled that the gun jammed and that he had to clear it in order to fire it again.

Investigators left Fuller alone in the interview room and, during this time, Fuller started talking to himself. He made statements such as: "That man running up on me . . . I ain't no b***h, man that man knew what he was doing. Thought he was gonna

5

whoop my a** and I be crippled[2] and I ain't gonna do s**t. I ain't gonna stand out there and get my a** whooped." Investigators returned a few minutes later and served Fuller with an arrest warrant for murder. Fuller asked, "Murder?" and investigators left the room again. Fuller began speaking to himself again, stating things such as: "That n****r dead?"; "Man, I f***ed up"; and, "That n****r run up on me trying to fight me and I go to f***ing jail." After the interview, the police searched Fuller's home and recovered a Springfield 9mm handgun.

2. Fuller alleges that he received ineffective assistance of trial counsel based upon counsel's failure to: (a) object to Fludd's testimony that Fuller had sent her a threatening message on social media on the ground that her testimony violated OCGA § 24-10-1002[3] ("the best evidence rule"); (b) request that the pattern charge

---

[2] At the time of the shooting, Fuller was using a walker as he was recovering from a recent gunshot wound to the leg he incurred in an unrelated matter.

[3] OCGA § 24-10-1002 provides as follows: "To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."

6

for voluntary manslaughter be modified to fit the evidence presented at trial; and (c) argue to the jury that Landy's taunts were sufficient to support a finding that Fuller acted as a result of an irresistible passion. In order to establish constitutionally ineffective assistance, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

To prove deficiency, Fuller must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). In order to do so, Fuller must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable

7

professional conduct." *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). "This burden, although not impossible to carry, is a heavy one." *Harrison v. State*, 309 Ga. 747, 749-750 (2) (848 SE2d 84) (2020). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citation and punctuation omitted). Viewing the claims in this light, we conclude that Fuller has failed to show constitutional deficiency on the part of his trial counsel.

(a) *Best Evidence Objection*

Fludd testified at trial that, prior to their child's first birthday party, Fuller sent her a direct message on social media that he was going to kill her and Landy and "take my child." Trial counsel did not object to this testimony at trial.[4] Fuller argues that trial counsel

---

[4] Prior to trial, the State filed a motion to introduce "evidence identifying prior difficulties and threats made by the defendant that the State contends

8

was ineffective for failing to object to this testimony pursuant to the best evidence rule. We disagree.

At the motion for new trial hearing, Fuller questioned trial counsel as to why he did not object to Fludd's testimony under the best evidence rule. Trial counsel testified that his theory was to "attack[] the police work in the case, and part of that argument was the fact that they had the ability, perhaps, to download this message from Messenger or get a copy, and that had not been presented to the jury." Fuller also asked trial counsel why he did not lodge a best evidence objection to the threat at the pretrial hearing. Trial counsel testified that he did not object on that basis because he did not believe the rule applied, explaining that "[t]he contents of the writing, nothing was being proved, . . . a witness can testify to things that there may be a writing to corroborate it, but it doesn't require

---

are intrinsic to the charged offenses." At a hearing on the motion, the State made a proffer to the trial court concerning the threatening message. Trial counsel objected to the admission of the threat at this time, arguing that the court needed to hear more evidence and facts before it could make a ruling on the admission of that evidence. The trial court disagreed and subsequently admitted the evidence via written order.

the writing to come in for the witness to testify to it."

In denying the motion for new trial, the court credited trial counsel's testimony, finding that counsel strategically "capitalized on the State's failure to present the actual . . . messages between the Defendant and Fludd during his closing argument to highlight the lack of a proper police investigation of the case." Here, trial counsel articulated a reasonable strategy to emphasize the missing message in order to attack the State's case. It is well settled that "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) (citation and punctuation omitted.) Fuller has not carried his burden to show that no competent attorney would have chosen this strategy.. (Indeed, the record shows that, during closing argument, trial counsel emphasized the missing message to the jury in support of his broader argument attacking Fludd's credibility and the sufficiency of the State's investigation into the case. Consequently,

we cannot say that by failing to raise a best evidence objection, counsel was pursuing an unreasonable strategy. Cf. *Holmes v. State*, 293 Ga. 229, 233 (3) (b) (744 SE2d 701) (2013) (trial counsel not deficient in decision not to object to hearsay because he believed that testimony supported appellant's defense). See also *Harrison*, 309 Ga. at 752 (2) (a) (explaining that not objecting to testimony "can be part of a reasonable trial strategy calculated to cast doubt on the State's belief in an unreliable witness"). Fuller therefore has failed to show deficient performance under *Strickland*.

(b) *Voluntary Manslaughter Jury Instruction*

Fuller contends that trial counsel was ineffective for failing to request that the pattern jury charge on voluntary manslaughter be modified to include the following phrase: "Similarly, words which are connected to, or describe, the provocative conduct by the victim may, in some instances, be sufficient provocation to excite a sudden, violent, and irresistible passion in a reasonable person." Fuller argues that this additional verbiage would have been supported by the evidence and would have provided the jury an additional avenue

11

to consider voluntary manslaughter over murder. We disagree.

At trial, the court read the jury the pattern instruction on voluntary manslaughter, which read, in relevant part, as follows:

> Provocation by words alon[e] will, in no case, justify such excitement or passion sufficient to free the accused from the crime of murder or to reduce the offense to manslaughter when the killing is done solely in resentment of such provoking words. Words accompanied by menaces, though the menaces do not amount to an actual assault, may, in some instances, be sufficient provocation to excite a sudden, violent, and irresistible passion in a reasonable person. And if a person acts from such passion and not from malice or any spirit of revenge, then it would constitute – then such would constitute voluntary manslaughter.

During closing argument, trial counsel relied upon the voluntary manslaughter charge to argue that where words are "menaces and do not amount to an actual assault, then in some cases words may be enough. It's sufficient if it causes provocation and excites a sudden, violent, and irresistible passion in a reasonable person. . . . then words can be enough under the voluntary manslaughter instruction." Trial counsel then emphasized Stevens' testimony that Landy was provoking Fuller prior to the shooting, that Landy

12

taunted Fuller about taking care of Fuller's child and sleeping with Fludd, argued that those provocations were done intentionally "to push [Fuller]'s buttons that night," and argued that the taunts were sufficient provocation to mitigate Fuller's actions to voluntary manslaughter.

At the motion for new trial hearing, when asked about the potential to modify the "provocation by words alone" charge, trial counsel testified that he was "very comfortable with the standard instruction" because the "instruction provided me with sufficient law to argue the point that I wanted to argue" concerning voluntary manslaughter. The trial court credited trial counsel's testimony and found "that [counsel's] tactical decision to make his argument to the jury based on the pattern charge was reasonable and therefore that his performance in that regard was not deficient." See *Jones v. State*, 287 Ga. 270, 272 (695 SE2d 271) (2010) ("The trial court was authorized to credit the testimony of [appellant's trial] counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous.").

We agree with the trial court that Fuller has failed to show that trial counsel was constitutionally deficient for failing to request that language be added to the pattern jury charge at issue. "Under *Strickland,* decisions on requests to charge involve trial tactics to which we must afford substantial latitude, and they provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." *Pennie v. State*, 292 Ga. 249, 252 (2) (736 SE2d 433) (2013) (citation and punctuation omitted). Here, we cannot say that Fuller has met this burden. Trial counsel articulated a reasonable strategy in utilizing the pattern charge. Further, the record shows that counsel in fact emphasized portions of the charge to argue to the jury that Landy's menacing words were sufficient provocation to mitigate Fuller's actions to voluntary manslaughter rather than malice murder. Because trial counsel's "decisions regarding trial tactics and strategy" were not "so patently unreasonable that no competent attorney would have followed such a course," *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016) (citation and punctuation omitted),

14

Fuller has failed to show that trial counsel was deficient by not requesting that the jury charge at issue be modified.

(c) *Closing Argument*

Fuller alleges that trial counsel was ineffective for failing to argue to the jury that Landy's taunts were sufficient to create an irresistible passion and support a finding of voluntary manslaughter rather than malice murder. However, as shown above, trial counsel did make this argument to the jury. Consequently, Fuller has failed to show deficient performance under *Strickland* on this claim.

3. Finally, Fuller argues that the cumulative effect of counsel's alleged errors prejudiced the outcome of his trial. "When reviewing such a claim, we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Cox v. State*, 306 Ga. 736, 743 (2) (e) (832 SE2d 354) (2019) (citation and punctuation omitted). Here, Fuller has failed to show deficiency on any of his allegations of ineffective assistance; therefore, his cumulative effect assertion has no merit. See id.

*Judgment affirmed. All the Justices concur.*

15