**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2025

S25A0877. COPNEY v. THE STATE.

LAND, Justice.

Leroy Starr Copney, Jr., was convicted of malice murder and other crimes in connection with the shooting death of Andrew Spencer and the non-fatal shooting of Quintin Heard.[1] On appeal,

---

[1] The crimes occurred in the early morning of December 29, 2016. On September 26, 2019, a DeKalb County grand jury indicted Copney for malice murder, felony murder, two counts of participation in criminal gang activity, two counts of aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. At a trial from November 29 to December 2, 2021, the jury acquitted Copney of one count of participation in criminal gang activity but found him guilty of all other charges. The trial court sentenced Copney to serve life in prison without the possibility of parole for malice murder, a consecutive term of 20 years in prison for one count of participation in criminal gang activity, a consecutive term of 10 years in prison for possession of a firearm by a convicted felon, a consecutive term of 20 years in prison for one count of aggravated assault, and a consecutive term of 5 years in prison for possession of a firearm during the commission of a felony. The felony murder verdict was vacated by operation of law, and the remaining aggravated assault count merged into the malice murder count. On December 8, 2021, Copney filed a motion for new trial, which he amended with new counsel on May 31, 2023. After an evidentiary hearing on October 11, 2024, the trial court entered an order

he argues that his trial counsel was ineffective in several respects and that the cumulative effect of trial counsel's errors warrants a new trial. For the reasons that follow, we affirm.

1. The evidence presented at trial showed the following. During the early morning hours of December 29, 2016, Jilani Bakhari drove Copney to a gas station in Chamblee. Shortly after, Spencer and Heard stopped at that gas station and parked at a pump next to Bakhari's car. Inside the store, Spencer and Copney, who had never met before, had a "misunderstanding" that upset Copney. According to Bakhari, "somebody stepped on somebody or something like that."

After the brief confrontation, Copney walked to Bakhari's car to retrieve a jacket and then returned to the entrance of the store, but he did not go inside. Shortly after, Bakhari exited the store and then got into his car. Spencer and Heard exited moments after Bakhari. According to Heard, when they left the store, Copney said

---

denying the motion on November 12, 2024. Copney filed a timely notice of appeal, and the case was docketed in this Court for the April 2025 term and submitted for a decision on the briefs.

aggressively, "what's poppin'[2] . . . yeah, I saw you n\*\*gas looking at me in the store, y'all got me f\*\*ked up."  Spencer and Heard, who were both unarmed, tried de-escalating the situation and began walking to their car.

As Spencer and Heard walked away from Copney, Copney moved ahead of the two men, positioning himself between them and their car.  Surveillance footage showed that as Spencer continued to walk towards his car, Copney walked around a pole near a pump, pulled out a gun, and fired six shots at Spencer and Heard.  Immediately after, Copney got into the front passenger side of Bakhari's car, and Bakhari sped off.[3]  Heard ran back inside the gas station.

When the police responded, they found Spencer dead in the

---

[2] At trial, Heard testified that he believed "what's poppin" meant that Copney wanted to know who Spencer and Heard were.  A gang expert testified that the phrase "what's poppin" could mean "be prepared" for an altercation or an inquiry into what street gang one belongs to.

[3] Bakhari was initially indicted for murdering Spencer.  However, after agreeing to participate in the State's case against Copney, his charges were reduced to hindering apprehension or punishment of a criminal.  He ultimately accepted a plea under *North Carolina v. Alford*.  See *North Carolina v. Alford*, 400 US 25 (1970).

parking lot of the gas station. The police also recovered five shell casings at the scene. Around the time the police arrived, Bakhari dropped Copney off at an apartment complex, and Copney fled to Myrtle Beach, South Carolina, where he was later arrested.

At trial, the medical examiner who conducted Spencer's autopsy testified that Spencer's death was a homicide caused by one gunshot wound to the chest. During the autopsy, the medical examiner found one bullet in Spencer's body. A firearms examiner testified that the bullet found inside of Spencer's body and the five shell casings found at the scene were .45-caliber. The examiner also stated that those shell casings shared characteristics that were consistent with being fired from the same gun.

A street gang expert testified that based on Copney's social media posts and tattoos, he concluded that Copney was a member of the "Bloods" criminal street gang. The expert explained that in street gang culture, gang members may respond with violence to perceived disrespect and that looking at a gang member for too long may be considered disrespectful. There was also evidence presented

4

at trial that Copney obtained more gang-related tattoos while in custody. The gang expert opined that if a gang member received more gang-related tattoos he likely received an increase in gang status and that handling perceived disrespect by, for example, murder, may result in increased status.

Copney, who was a convicted felon, elected to testify in his own defense. He admitted that he shot Spencer but claimed that he did so in self-defense. Copney claimed that Spencer or Heard had bumped into him when they entered the store. According to Copney, he never said "what's poppin," and that when the two men exited the gas station, Heard walked past Copney and said something to the effect of "you waitin' for us" or "why you still here." Copney contended that he was the one who attempted to de-escalate the situation and that he could see a gun on Heard's right hip.[4] Copney testified that as he was walking to Bakhari's car, he thought Spencer

---

[4] Copney initially testified that he saw the barrel of Heard's gun, but later said that he saw the handle of the gun. He also stated that the gun was under Heard's shirt. Footage of Heard from the cameras inside the gas station immediately before the shooting do not show a visible gun on Heard's hip or under his shirt. **;**

and Heard were following him and that Heard purportedly told Copney that he "could get it right here. Right now." Copney claimed that he shot at Spencer and Heard because he feared for his life.

2.    Copney argues that his trial counsel rendered constitutionally ineffective assistance in several respects. To establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance by his counsel and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984).

To prove deficient performance, a defendant must show that his attorney performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See *Strickland*, 466 US at 687–88. The law recognizes a "strong presumption" that counsel performed reasonably, which the defendant bears the burden of overcoming. Id. at 689.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time ... There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Id. (citations omitted). Accord *Wells v. State*, 295 Ga. 161, 163–64 (2014). See also *Harrington v. Richter*, 562 US 86, 105 (2011) ("[T]he standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.").

To overcome the strong presumption of competence, a defendant must show that no reasonable attorney would have done what his attorney did or would have failed to do what his attorney did not do. See *Wells*, 295 Ga. at 164. "[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic[,] [a]nd

7

decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Pierce v. State*, 319 Ga. 846, 866 (2024) (cleaned up).

Even when a defendant has proved that his counsel's performance was constitutionally deficient, the defendant also must prove resulting prejudice to prevail on a claim of ineffective assistance of counsel. To do so, the defendant must establish that but for his counsel's unprofessional errors, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Strickland*, 466 US at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 US at 104 (quoting *Strickland*, 466 US at 693). Rather, the defendant must demonstrate a "reasonable probability" of a different result, which is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (2018).

In all, the burden of proving a claim of ineffective assistance of counsel is a heavy one. See *Harrington*, 562 US at 105. We conclude that Copney's trial counsel did not render ineffective assistance for the reasons stated below.

(a) Copney argues that his trial counsel rendered ineffective assistance when he did not object to the admission of four of Copney's prior convictions on the grounds that they were inadmissible under OCGA § 24-6-609.

Before trial, the State filed a notice of intent to introduce six of Copney's prior convictions for impeachment purposes. Copney's trial counsel did not file a response to the State's notice. During its case-in-chief, the State presented State's Exhibit 99, a certified copy of conviction in Dekalb Superior Court showing that Copney pled guilty to second-degree forgery in January 2006, as evidence of Copney's convicted-felon status. State's Exhibit 99 was admitted without objection and published to the jury.

At the very end of Copney's direct examination, his trial counsel asked him, "[H]ave you ever been in trouble before," and

9

Copney responded, "Yes." Copney's trial counsel then stated "[t]he State's going to go into that." On cross-examination, the State moved to admit State's Exhibits 101–103.[5] Trial counsel did not object to the admission of the three exhibits. The State then began to question Copney about each of his prior convictions. State's Exhibit 101 was a certificate of disposition in the Supreme Court of New York showing that Copney, under the alias Troy Smith, was convicted of two counts of first-degree robbery and one count of second-degree robbery in October 1990. State's Exhibit 102 was a certification of disposition in the Supreme Court of New York showing that Copney pleaded guilty to second-degree attempted criminal possession of a weapon in February 1998. State's Exhibit 103 included an indictment and sentence for first-degree promoting prison contraband in Washington County Court in New York in

---

[5] The State also moved to admit State's Exhibits 104, 105, and 107. On appeal, Copney does not challenge the admission of State's Exhibit 105, which included a certified copy of his 2011 conviction for assault with a deadly weapon causing serious injury and felon in possession of firearm in North Carolina, or State's Exhibit 107, his 2018 conviction for felon in possession of a firearm in South Carolina federal court. Copney's challenge to the admission of State's Exhibit 104 is discussed below in Division 2 (b).

January 1999. On redirect, trial counsel asked Copney whether he "den[ied] [his] convictions," and he responded, "no."

During its charge to the jury, the trial court provided the jury with limiting instructions regarding Copney's prior convictions, stating that they could only be used for attacking the credibility of a defendant or as a required element of the felon-in-possession count.

At the motion for new trial hearing, Copney's trial counsel was asked whether she considered objecting to Copney's prior convictions on the grounds that they were "too old." Trial counsel answered, "no." She also testified that she could not recall whether Copney had more recent convictions.

OCGA § 24-6-609(a)(1) provides, in relevant part, that evidence that a defendant was convicted of a felony shall be admissible to attack the defendant's credibility "if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused." However, under OCGA § 24-6-609(b),

> Evidence of a conviction under [OCGA § 24-6-609] shall not be admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of

11

the witness from the confinement imposed for such conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, shall not be admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Here, it is undisputed that more than ten years had elapsed since the convictions at issue and the release of Copney from confinement. However, Copney has not shown that his trial counsel's failure to object to State's Exhibits 99 and 101–103 on the grounds that they were inadmissible under OCGA § 24-6-609(b) was deficient performance.

State's Exhibit 99 was admitted without objection during the State's case in chief for establishing an essential element of possession of a firearm by a convicted felon, not for impeaching Copney's credibility under Rule 609. Any objection based on Rule 609 would have been meritless and trial counsel therefore was not deficient. As for the other prior convictions, the only testimony

12

regarding trial counsel's decision not to object was her statement that she did not consider objecting based on the age of the convictions; she was not asked why she did not consider an objection. See *Vivian v. State*, 312 Ga. 268, 273 (2021) (no ineffective assistance for failing to object to purportedly inadmissible evidence where trial counsel was not asked why she did not object and defendant provided no other evidence that her decision was not strategic). And under the circumstances, a reasonable lawyer may very well have had a strategic reason for not objecting to these old convictions, such as a desire to establish Copney's credibility by having him admit to his prior crimes while denying the charges at issue. In addition, counsel may have wanted to not draw attention to the older convictions that were similar in nature to Copney's more recent convictions that were admitted in State's Exhibits 105 and 107. See *Rashad v. State*, 318 Ga. 199, 212–13 (2024) (holding that it was not objectively unreasonable for counsel to not object to bad character evidence that was mentioned in passing and largely cumulative of other, admissible evidence). Because a reasonable

13

attorney in trial counsel's position could have made a strategic decision not to object to these older convictions, Copney has not met his burden of demonstrating that his trial counsel was deficient. Accordingly, this enumeration fails.

(b) Copney argues that his trial counsel rendered ineffective assistance when she did not object to the use of an out-of-state arrest warrant for impeachment and by not objecting to specific portions of the warrant that misstated his prior conviction. Although we agree that trial counsel's performance was deficient, Copney has failed to carry his burden of showing prejudice.

During its cross-examination of Copney, the State admitted, without objection, State's Exhibit 104. State's Exhibit 104 included an arrest warrant and indictment for Copney for possession of a firearm by a felon in North Carolina, dated November 2010 and March 2011, respectively. On cross-examination, the State asked Copney whether he was "convicted of possession of a firearm by a felon in North Carolina in 2010?" and Copney answered "yes." The State then asked Copney to read the arrest warrant portion of

State's Exhibit 104 aloud to the jury, which stated, in relevant part, that Copney had "previously been convicted of the felony of MURDER:DEPRAVED INDIFFERENCE which was punishable [by] 5 YEARS. This felony was committed on 04/05/1997 and the defendant plead guilty to the felony on 03/31/1998 in … NEW YORK and was sentenced to 5 YEARS."[6]  When asked whether "this certified copy of the conviction … reflect[s] that having been previously been [sic] convicted of murder in New York, you subsequently had a firearm in your possession in North Carolina," Copney repeatedly denied that he had been convicted of murder and stated that "[t]here's nothing that you could produce to show that I was … convicted of murder in New York."  When asked whether he pleaded guilty in 2011 to aggravated assault with a deadly weapon causing serious injury and possession of a firearm by a felon in North Carolina, Copney stated that he "pleaded to possession of firearm by felon."  On redirect, Copney stated that he did not deny

---

[6] The date of Copney's alleged commission and conviction for murder in State's Exhibit 104 matched the date of his arrest and conviction for weapons charges in State's Exhibit 102.

his prior convictions.

During closing arguments, Copney's counsel stated that, regarding his alleged prior murder conviction, "[i]f the State had it, if that was true, you would have seen it" and contended that it was not true. In its closing, the State stated that this was Copney's "third case of shooting someone [and] [h]is second murder." Copney's trial counsel objected, her objection was sustained, and the trial court directed the State to argue only the "language that is contained in that certified copy" of State's Exhibit 104. The State then stated that Copney "has previously been convicted of the felony of murder, depraved indifference," and later in closing, that he had previously been convicted of murder. Copney's counsel objected again, and the trial court sustained the objection, stating that although "in one of the documents there may be language pertaining to a charge in a different jurisdiction … to my understanding there's no certified copy of the murder conviction" in the record.

At the motion for new trial hearing, trial counsel was asked whether she "consider[ed] objecting" to the warrant and indictment

16

in State's Exhibit 104 "on the grounds that they were not proper impeachment evidence." Trial counsel answered, "no." She stated that she noticed the allegation of murder on the warrant in State's Exhibit 104 but understood it to refer to a "gun charge, not related to a homicide." When asked whether an objection to that exhibit "as a mere warrant" would have helped Copney's case, trial counsel answered, "yes." Trial counsel also testified that she did not notice that the date of the prior alleged murder was the same date as the attempted possession of a weapon charge at issue in State's Exhibit 102 and agreed that it would not have harmed her case to rehabilitate Copney's credibility on this charge or to correct the record.

For the purposes of attacking credibility, OCGA § 24-6-609(a)(1) allows admission of "evidence that an accused has been *convicted* of … a crime[.]" (emphasis added). This evidence includes "the fact of the *conviction*, the nature of the *conviction*, and the punishment," while "the specific facts and circumstances of the prior *convictions* generally are not admissible." *Sinkfield v. State*, 318 Ga.

17

531, 544 (2024) (emphasis added). Accordingly, OCGA § 24-6-609(a)(1) does not permit the impeachment of witnesses, including a defendant, through evidence of arrest warrants or indictments. This is consistent with persuasive federal authority interpreting Federal Rule of Evidence 609.[7] See, e.g., *United States v. Wilson*, 244 F.3d 1208, 1217 (10th Cir. 2001), as corrected on reh'g (May 10, 2001) ("[Q]uestions based upon past arrests are not properly within the scope of [Federal Rule of Evidence 609]. Rule 609 refers specifically to convictions, and one may not extrapolate from convictions to other situations such as arrests."); *Medrano v. City of Los Angeles*, 973 F.2d 1499, 1507 (9th Cir. 1992) ("[Federal Rule of Evidence] 609 does not allow the use of prior arrests for purposes of impeachment."); *Am. Env't Enters., Inc. v. Health Env't Loss*

---

[7] Because OCGA § 24-6-609(a)(1) is identical in all relevant respects to the corresponding federal rule, we look for guidance to federal case law, especially case law from the United States Supreme Court and federal appellate courts, particularly the Eleventh Circuit Court of Appeals. See *State v. Almanza*, 304 Ga. 553, 556–58 (2018) (when Georgia courts consider the meaning of the current Evidence Code, they should be guided by federal case law, particularly the decisions of the Eleventh Circuit, prior to its adoption, until a Georgia appellate court decides the issue under the new Code).

*Prevention, Inc.*, 921 F.2d 276, *7 (6th Cir. 1990) ("[E]vidence of an indictment is not admissible at trial to impeach a witness.") (citing Federal Rule of Evidence 609); *United States v. Eubanks*, 876 F2d 1514, 1517 (11th Cir. 1989) (stating that prosecutor's question to defendant-witness was improper "because it involved prior arrests rather than convictions"); *United States v. McBride*, 862 F.2d 1316, 1320 (8th Cir. 1988) ("[A]n indictment does not amount to a conviction of a crime, and only the latter is admissible for impeachment purposes.") (citing Federal Rule of Evidence 609); *United States v. Hodnett*, 537 F2d 828, 829 (5th Cir. 1976)[8] ("Of course, a witness normally may be impeached by showing prior conviction of a sufficient crime. However, under that doctrine, effort to impeach on the basis of mere accusation or arrest is not permissible." (citations omitted.)).

Here, State's Exhibit 104 contains only an arrest warrant and an indictment, neither of which was admissible under OCGA § 24-

---

[8] The Eleventh Circuit has adopted as binding precedent decisions made by the Fifth Circuit handed down on or before September 30, 1981. See *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

6-609(a)(1). Despite this, Copney's trial counsel failed to object both on this ground and on the fact that the warrant was predicated on a crime—felony murder: depraved indifference—that there was no evidence that Copney committed. Thus, we conclude that Copney's trial counsel's failure to object was patently unreasonable and thus deficient performance under *Strickland*.

To prevail on his ineffective assistance claim, however, Copney must also show that the harm from trial counsel's inaction was sufficient to undermine confidence in the trial's outcome. See *Jennings v. State*, 318 Ga. 579, 589 (2024). We determine that it was not.

First, while the warrant portion of State's Exhibit 104 improperly suggested that Copney had previously been convicted of murder, the indictment portion of State's Exhibit 104, which Copney does not challenge, removed any reference to a prior murder and stated that Copney's prior felony was forgery. And Copney's subsequent conviction for the felon-in-possession charge, State's Exhibit 105, was admitted alongside State's Exhibit 104, showing

that Copney was convicted of the offense for which he was indicted, i.e., being a felon in possession of a firearm with the underlying felony being forgery. This same exhibit showed that Copney was also convicted of assault with a deadly weapon resulting in serious injury, but there is no reference to any alleged murder.

And although the State had Copney read the warrant aloud to the jury during cross-examination, Copney vehemently denied that he had been previously convicted of murder and stated that "[t]here's nothing that [the State] could produce to show that I was … convicted of murder in New York," further undermining any potential harmful effect of the warrant language.

Additionally, during closing arguments, trial counsel pointed out that had Copney actually been convicted of murder, the State would have presented the conviction, and when the State referred to Copney's alleged conviction for murder during its closing argument, the trial court sustained trial counsel's multiple objections and stated that there was no certified copy of a prior murder conviction in the record. In addition, the trial court instructed the jury that

21

Copney's prior convictions could only be considered for the limited purpose of attacking Copney's credibility or as a required element of the felon-in-possession count. Copney's credibility was also impeached by other, non-contested prior convictions, including his subsequent conviction for the felon-in-possession charge mentioned in State's Exhibit 104 and the related assault with a deadly weapon conviction arising from the same indictment. All of these things reduced the harmful effect of the erroneous warrant language.

Moreover, there was overwhelming evidence of Copney's guilt: the video of the shooting, which belied Copney's testimony that Heard was armed or the aggressor; the evidence regarding Copney's gang activity; Copney's evasive responses to certain questions about his actions after the shooting ; the multiple prior convictions that undermined his credibility; and Copney's subsequent flight to South Carolina. Based on this evidence, we conclude that Copney has failed to carry his burden of showing *Strickland* prejudice, and this enumeration fails. See *Jennings*, 318 Ga. at 592–93 (even assuming several instances of deficient performance by trial counsel,

22

defendant failed to show prejudice given the strong evidence against him).

(c) Copney argues that his trial counsel rendered ineffective assistance when she did not object to the State's mention of inadmissible other-acts evidence on prosecutorial misconduct grounds, which he contends would have led to the trial court's rebuke of the prosecutor and a curative instruction. While we do not condone the prosecutor's actions with respect to this issue, we disagree that trial counsel's failure to raise a prosecutorial misconduct objection with a corresponding request for rebuke of counsel and a curative instruction resulted in any prejudice under *Strickland*. Accordingly, we reject the ineffective assistance of counsel argument arising from this issue.

During the State's cross-examination of Copney, the following colloquy occurred:

STATE: How did you get all these scars on your face?
TRIAL COUNSEL: Objection, Your Honor, relevance.
COURT: Sustained. Next question.
STATE: Did you get these scars on your face when you

23

were fighting with the --

TRIAL COUNSEL: Objection, your honor.

COURT: Let him finish the question.

STATE: -- when you were fighting with the ... correctional officer in Rikers when you slashed three of them with a razor blade?

TRIAL COUNSEL: Objection

COURT: Sustained.

Copney now contends that trial counsel performed deficiently by not objecting to the above questions under OCGA § 17-8-75, which states that

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

While Copney's trial counsel did object to these questions and those objections were sustained, he argues that had trial counsel specifically objected pursuant to OCGA § 17-8-75, the trial court would have rebuked the prosecutor and instructed the jury to

disregard the objected-to statements.[9]

While it is true that Copney's trial counsel could have asked for a rebuke of the prosecutor and a curative instruction, there has been no showing that a rebuke of counsel and a curative instruction would have affected the outcome of the trial. It is undisputed that trial counsel objected to the State's line of questioning and that the objection was sustained. Although the State's reference to an alleged fight between Copney and correctional officers "[could] have been unfairly prejudicial, any such comment had very little, if any, effect" on Copney's defense given the overwhelming evidence of his guilt, his admission to shooting the victim, and the significant evidence undercutting his justification defense. *Jackson v. State*, 317 Ga. 139, 146 (2023) (trial counsel not ineffective for failing to move for mistrial based on prosecutor's allegedly improper questioning). We are not persuaded that either of these actions, had they been taken by the trial court, would have changed the outcome of the trial. The

_____

[9] Copney does not argue that trial counsel was ineffective for failing to move for a mistrial pursuant to OCGA § 17-8-75 or that the trial court would have granted a mistrial in response to trial counsel's objection.

objection made by trial counsel was sustained and Copney did not answer the State's question. Thus, Copney has not carried his burden on prejudice, and his ineffective assistance of counsel argument fails. See *Strickland,* 466 US at 694.

(d) Copney argues that his trial counsel rendered ineffective assistance when she did not object to the trial court's jury instructions regarding Count 3, which charged Copney with participation in criminal gang activity in violation of OCGA § 16-15-4(a).[10] Specifically, Copney takes issue with the portion of the jury instruction stating that "the State must prove that there is a nexus between the crime committed and the gang and that the crime was committed to further the interest of the gang, *meaning proof that the crime committed was the sort of crime that the gang does.*" (emphasis added).

---

[10] Under OCGA § 16-15-4(a), "[i]t shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3." "[T]he necessary and required element ... is that there must be some nexus between the act and an intent to further street gang activity. That nexus is provided by the use of the preposition 'through' in OCGA § 16-15-4(a)." *Rodriguez v. State*, 284 Ga. 803, 807 (2009) (punctuation omitted).

Prior to trial, the State requested a non-pattern jury instruction for Count 3. Copney also filed requests to charge the jury, but he did not include a request for Count 3. During the charge conference, trial counsel objected to the State's non-pattern instruction, asserting that she "would prefer the pattern." The State responded that "we've agreed," and the trial court confirmed that it would give the pattern instruction on that count. The State and the trial court then discussed the phrasing of the instruction to confirm that it tracked the language of the pattern instruction and was tailored to the indictment. Trial counsel did not object to the proposed language.

During its charge to the jury, the trial court gave the following pattern jury instruction in full[11]:

> COURT: The defendant is charged with the offense of Violation a[sic] Street Gang Terrorism and Prevention Act. That offense is defined as follows: A person commits the offense of Violation of Georgie [sic] Street Gang Terrorism and Prevention Act when that person, while employed by or associated with a criminal street gang, participates in criminal gang activity through the

---

[11] Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.02.25 (4th ed. 2024).

27

commission of any criminal offense in the State of Georgia, any other state, or the United States that constitutes criminal gang activity under Official Code of Georgia 16-15-3.

Criminal gang activity means, among other things not relevant to this case, the commission, attempted commission, conspiracy to commit, or solicitation, coercion or intimidation of another person to commit any criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon or use of a weapon. In order to prove a violation of the Georgia Street Gang Terrorism and Prevention Act, the State must prove beyond a reasonable doubt four elements.

First, the State must prove that there is a criminal street gang.

Second, the State must prove that the Defendant is associated with that criminal street gang. It is not necessary though that the State must prove that the defendant is a member of the gang.

Third, the State must prove that the defendant conducted or participated in the alleged predicate act.

*Lastly, the State must prove that there is a nexus between the crime committed and the gang and that the crime was committed to further the interest of the gang, meaning proof that the crime committed was the sort of crime that the gang does.*

For purpose of the offense of Violation of Georgia Street Gang Terrorism and Prevention Act, the term participate can, but does not have to be, defined as to take part in something, and/or to share in something.

Under Georgia law, a criminal street gang means

any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity. The term "criminal street gang" shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.

As charged in this case, criminal gang activity is when a person, while employed by or associated with a criminal street gang, conducts or participates in criminal street gang activity through the commission of any offense involving violence or possession of a weapon. The indictment in this case alleges that the defendant committed Aggravated Assault and Possession of a Firearm by a Convicted Felon.

(Emphasis added.)

At the hearing on Copney's motion for new trial, when asked about the now contested portion of the jury instruction, trial counsel testified that she "didn't think to object to the fact that it's contradictory statements of proving a nexus versus saying this is just the type of crime that a gang would commit."

On appeal, Copney argues that the portion of the jury instruction stating "meaning proof that the crime committed was the sort of crime that the gang does" is not found in OCGA § 16-15-4(a) and that its inclusion provided the State with an alternative, non-statutory means to satisfy its burden of proof. Copney further

argues that this contested language creates an unconstitutional presumption that the intent requirement for gang activity can be satisfied by an extraneous, non-statutory finding that the predicate offense is the "sort of crime that the gang does." See *Isaacs v. State*, 259 Ga. 717, 735 (1989) (noting that it is unconstitutional to instruct a jury "that a finding of fact x legally follows from proof of fact y"). However, given the state of the law at the time of the trial, Copney has failed to show that trial counsel's failure to object to the jury instruction was objectively unreasonable.

"Decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy." *Walker v. State*, 301 Ga. 482, 489 (2017) (citation omitted). They provide no grounds for reversal "unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." *Fuller v. State*, 316 Ga. 127, 132 (2023) (citation and punctuation omitted). Moreover, it is well settled that "[a] criminal defense attorney does not perform deficiently when [s]he fails to advance a legal theory that would require an extension of existing

precedents and the adoption of an unproven theory of law." *Esprit v. State*, 305 Ga. 429, 438 (2019) (citation and punctuation omitted).

Here, trial counsel requested and received the pattern jury instruction for a gang activity charge. At the time of the trial, there was no precedent holding that the contested language in the jury charge was improper. As to Copney's first argument, that the contested language provides the State with an alternative, non-statutory means to satisfy its burden of proof, this Court has previously rejected a plain error challenge to this pattern jury instruction. See *Dixon v. State*, 309 Ga. 28, 35–37 (2020) (stating that Criminal Pattern § 2.02.25 was a "correct and complete statement of the law applicable to the charges of participation in criminal gang activity under OCGA § 16-15-4(a)"). We note that this Court recently granted certiorari to determine whether, for purposes of proving a violation of OCGA § 16-15-4, the State can "prove that a defendant committed a crime with the intent to further the gang's interests by proving merely that the crime was of the 'sort' or 'type' that the gang commits." See *Lee v. State*, Case No. S25G0768.

31

Nonetheless, "trial counsel's failure to raise a novel legal argument does not constitute ineffective assistance of counsel." *Griffin v. State*, 309 Ga. 516, 520 (2020). See also *Rhoden v. State*, 303 Ga. 482, 486 (2018) ("[T]here is no requirement for an attorney to prognosticate future law in order to render effective representation. Counsel is not obligated to argue beyond existing precedent." (citations and punctuation omitted)). Accordingly, trial counsel's failure to argue the point that we have now granted certiorari on in *Lee* was not deficient.

Copney's second argument has already been expressly rejected by this Court. In *Jackson v. State*, 321 Ga. 659, 662 (2025) , the defendant argued that his trial counsel was constitutionally ineffective because he failed to object to the pattern jury instruction for a gang activity charge, which "purportedly contained language creating a constitutionally impermissible mandatory presumption." This Court held that "the challenged language does not create a mandatory presumption, nor does it shift the burden of proof to the defendant …. Rather, the instruction, read as a whole, informed the

jury about the 'meaning' of the phrase 'further the interests of the gang.'" Id. at 664. Because Copney "has not shown that trial counsel should have objected to the charge, he has not demonstrated that counsel's performance was deficient in this regard." Id. at 665. Accordingly, this enumeration fails.

(e) Copney argues that trial counsel's alleged errors caused him prejudice when considered collectively. See *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (2007), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17 (2020). Even considering the effect of any deficient performance in trial counsel's failure to object to the admission of Copney's arrest warrant combined with the effect of counsel's failure to object to the State's line of questioning under OCGA § 17-8-75, we conclude that Copney has not shown prejudice sufficient to warrant a new trial. See *Troutman v. State*, 320 Ga. 489, 501 (2024). The evidence of Copney's guilt was overwhelming, and any alleged prejudice to Copney from these two matters is far outweighed by the evidence of his guilt. Accordingly, he has failed to show that there is a reasonable probability that the result of his trial would have been

different had counsel performed as he claims she should have. For this reason, Copney has failed to establish that the combined prejudicial effect of any deficient performance by trial counsel requires a new trial. See id. at 501–02.

*Judgment affirmed. All the Justices concur.*